DALLAIRE v. BANK OF AM. ·

[224 N.C. App. 248 (2012)]

JACQUES A. DALLAIRE and FERNANDE DALLAIRE, Plaintiffs

v.

BANK OF AMERICA, N.A., HOMEFOCUS SERVICES, LLC, and LANDSAFE
SERVICES, LLC, Defendants

No. COA12-626

Filed 18 December 2012

**1. Appeal and Error—preservation of issues—argument abandoned**

Appeal from a summary judgment for defendant Homefocus Services, LLC (later Landsafe Services, LLC) was abandoned where the entirety of plaintiffs' brief was dedicated to allegations against defendant Bank of America.

**2. Mortgages and Deeds of Trust—refinanced home mortgage—first priority loan—duty of borrower and lender**

The trial court did not err by granting summary judgment for Bank of America (defendant) where there was no genuine issue of fact as to whether defendant owed plaintiffs a contractual duty to provide a first mortgage loan. The terms of the contract designated to plaintiffs the affirmative duty to assure that the lien had and maintained first priority and plaintiffs could establish no affirmative duty on the part of defendant to inform plaintiffs that the lien held second priority status.

**3. Fiduciary Relationship—lender and borrower—interaction prior to loan—summary judgment not proper**

Summary judgment should not have been granted for defendant Bank of America in an action arising from a refinanced home mortgage where plaintiffs alleged breach of fiduciary duty. While uncommon, North Carolina law does leave room for the recognition of a fiduciary relationship between lender and borrower. In this case, plaintiffs did not receive outside advice and, when the facts are viewed in the light most favorable to plaintiffs, there is a question of fact as to whether the circumstances of the parties' interaction prior to signing the loan gave rise to a fiduciary relationship.

**4. Fraud—negligent misrepresentation—home refinancing—summary judgment**

Summary judgment should not have been granted for defendant Bank of America on the issue of whether defendant negligently misrepresented the priority a home refinancing loan would receive.

**5. Mortgages and Deeds of Trust—home refinancing—statute not retroactive**

The trial court properly granted summary judgment for Bank of America (defendant) on a claim that defendant violated the Secure and Fair Enforcement Mortgage Licensing Act, N.C.G.S. § 53-244.110 (2011), where plaintiffs' claims arose from negotiations and a contract executed prior to the enactment of the statute. The legislature expressed a clear intent that the statute be applied prospectively.

**6. Appeal and Error—preservation of issues—argument not sufficient**

Plaintiffs abandoned an argument concerning the Mortgage Lending Act (MLA), N.C.G.S. § 53-243.01 to -543.18 (2001) (repealed 2009), the predecessor to the current statute, by not arguing what the statutory standard was or how it was violated.

Appeal by Plaintiffs from judgment entered 14 February 2012 by Judge W. David Lee in Cabarrus County Superior Court. Heard in the Court of Appeals 29 November 2012.

*Ferguson, Scarbrough, Hayes, Hawkin & DeMay, P.A., by James E. Scarbrough, for the Plaintiff-Appellants.*

*McGuire Woods, LLP, by Lia A. Lesner and Robert A. Muckenfuss, for Defendant-Appellees.*

*Jerome N. Frank Legal Services Organization, by J.L. Pottenger, Jr., Amicus Curiae.*

BEASLEY, Judge.

Jacques and Fernande Dallaire (Plaintiffs) appeal from the trial court's entry of summary judgment in favor of Defendants. For the following reasons, we affirm in part and reverse and remand in part.

In 2005, Plaintiffs filed Chapter 7 bankruptcy to relieve their personal liability on their debts. Through the bankruptcy proceedings, Plaintiffs were relieved of their personal liability on three mortgage liens held by two lenders against Plaintiffs' home. Defendant Bank of America held two of these liens: one, a deed of trust on a mortgage note in first priority status, in the original amount of $138,900 and a second, an equity line deed of trust in second priority status, in the

original amount of $25,000. The third lien secured a business loan and was held by Branch Banking & Trust (BB&T) in the original amount of $241,449.37 in third priority status. All liens remained valid as against the property.

In July 2007, Plaintiffs responded to Defendant's mailing solicitations for refinancing home mortgages and went to Defendant Bank of America's local branch to discuss a refinance mortgage for their home. Plaintiffs allege that they informed Defendant's agent fully with respect to their bankruptcy and remaining liens. Plaintiffs also allege that Defendant Bank of America's agent repeatedly assured them that a new refinancing loan would receive first priority status and advised them to increase the amount of the loan to pay off two car notes. Relying on this assurance and advice, and without seeking outside counsel, Plaintiffs applied for a refinancing loan in the amount of $166,000. They were approved and received roughly $24,000 in cash from the loan to repay their car notes. Overall, their monthly expenses were reduced.

The Plaintiffs' loan application was for a first-mortgage lien. On the application, Plaintiffs disclosed that they had "been obligated on [a] loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment[.]" However, Plaintiffs checked "No" next to the disclosure asking whether they had "been declared bankrupt within the past 10 years[.]"

Following the application and in accordance with general procedure, Defendant Bank of America ordered a "title search" from its subsidiary, Defendant HomeFocus (now Landsafe Services).[1] This "title search" showed the three liens held against Plaintiffs home. Defendant Bank of America employed LSI Title Agency (LSI), upon which Defendant employed to do "curative title work[,]" to assess the validity of the BB&T lien. LSI gathered information from Plaintiffs and noted that Plaintiffs advised LSI that the BB&T lien was discharged. LSI advised Defendant Bank of America that it was secure in moving forward with the loan. Defendant Bank of America did not have an attorney review the information and handled the full refinance process itself.

---

1. In their briefs, both parties refer to the research performed by Defendant HomeFocus (now LandSafe Services) as a "title search." We have placed this language in quotations because a title search in North Carolina is an act which constitutes the practice of law as defined by N.C. Gen. Stat. § 84-2.1 (2011). We also note that corporations are prohibited from practicing law. *See* N.C. Gen. Stat. § 84-5 (2011).

In 2010, Plaintiffs attempted to sell their home and conducted a title search. The search revealed the priority status of the liens on the home: the BB&T lien now held first priority and the new Bank of America lien held second priority.

On 15 December 2010, Plaintiffs filed the instant action. Plaintiffs alleged negligent misrepresentation, negligent title search, breach of contract, breach of fiduciary duty, and statutory violations. On 18 January 2011, Defendants filed a motion to dismiss for failure to state a claim. The trial court denied this motion on 21 February 2011. On 19 December 2011, Plaintiffs moved to join LSI Title Agency as an additional defendant. On 29 December 2011, Defendants filed a motion for summary judgment. On 14 February 2012, the trial court heard both motions and granted Defendants' motion for summary judgment but dismissed the action without prejudice as to the non-party LSI Title Agency. Plaintiffs appeal the dismissal.

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008)(quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)).

**[1]** We first note that Plaintiffs attribute no breach of duty, negligent act, or legal wrong to Defendant Landsafe Services (formerly HomeFocus Services). The entirety of Plaintiffs' brief is dedicated to allegations against Defendant Bank of America. Consequently, we affirm summary judgment with respect to Landsafe Services (formerly HomeFocus Services).[2] We also note that Plaintiffs did not argue that the trial court erred in granting summary judgment on the claim of negligent title search. "Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned." N.C. R. App. P. 28(b)(6). This argument is thus abandoned.

### I. Breach of Contract Claim

**[2]** Plaintiffs first argue that the trial court erred in granting Defendants' motion for summary judgment because a genuine issue of material fact exists as to whether Defendant Bank of America owed Plaintiffs a contractual duty to provide a first mortgage loan. We disagree.

---

2. Because this leaves only Defendant Bank of America as a defendant in this action, this opinion will use the term "Defendant" moving forward to reference Defendant Bank of America.

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000)(citation omitted).

Here, Plaintiffs make no clear allegations in their brief that a contract existed outside of the signed note and deed of trust to secure the loan.[3] Thus, to establish a breach of contract, Plaintiffs must show that Defendant breached the duty undertaken in the express terms of the written loan contract between the parties. The terms of deed of trust include the following duties:

> **Borrower shall** promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, **Lender may** give Borrower *a notice identifying the lien.* Within 10 days of the date on which that notice is given, **Borrower shall** satisfy the lien or take one or more of the actions set forth above in this Section 4.

(emphasis added). Thus, the terms of the contract designate the affirmative duty to assure that this lien has and maintains first priority to Plaintiffs as the borrowers. The only duty assumed by Defendant is a discretionary one in which Defendant may choose to notify Plaintiffs if it learns that this lien does not have first priority, but Defendant does not have to perform this action. Therefore, Plaintiffs can estab-

---

3. Plaintiffs allude to the possibility that Defendant's refinancing solicitations or subsequent negotiations constituted an offer but provide nothing specific allowing this Court to determine that a clear and definite offer was made or accepted prior to the written contract signed by the parties.

lish no affirmative duty on the part of Defendant to inform Plaintiffs that the lien held second priority status.[4]

## II. Tort Claims

Plaintiffs next argue that the trial court erred in granting summary judgment because a genuine issue of material fact exists as to whether a duty existed with respect to Plaintiffs' tort claims. We agree.

### A. Breach of Fiduciary Duty

**[3]** A fiduciary relationship "may exist under a variety of circumstances; it exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931). Beyond the usual occurrence, such as that found between a lawyer and client, the relationship "extends to any possible case in which a fiduciary relation exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other." *Id.* (citation omitted)(internal quotation marks omitted). "Whether such a relationship exists is generally a question of fact for the jury." *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 178, 684 S.E.2d 41, 53 (2009)(citation omitted).

While uncommon, North Carolina law does leave room for the recognition of a fiduciary relationship between lender and borrower.

> [A]n ordinary debtor-creditor relationship generally does not give rise to such a special confidence: [t]he mere existence of a debtor-creditor relationship between [the parties does] not create a fiduciary relationship. This is not to say, however, that a bank-customer relationship will never give rise to a fiduciary relationship given the proper circumstances. Rather, parties to a contract do not thereby become each others' fiduciaries; they generally owe no special duty to one another beyond the terms of the contract and the duties set forth in the U.C.C.

*Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 60-61, 418 S.E.2d 694, 699 (1992)(second and third alteration in original)(cita-

---

4. Although Plaintiffs' complaint alleges in the alternative that they were intended third-party beneficiaries of the contract between LandSafe and Bank of America, Plaintiffs do not advance this argument on appeal. Accordingly, we need not address it.

tions omitted)(internal quotation marks omitted). In *Branch Banking & Trust Co.*, this Court found that no fiduciary duty existed where the borrowers relied on outside counsel and advice in addition to the representations of the lender. *Id.*

Here, Plaintiffs argue that special circumstances were present to give rise to a fiduciary relationship where the facts suggest that Defendant advised Plaintiffs that a first priority lien was possible and being provided. Plaintiffs allege that they openly discussed their circumstances with Defendant and that Defendant assured them they could obtain a first priority lien mortgage loan. We find this case distinguishable from *Branch Banking & Trust Co.* because Plaintiffs did not receive outside advice. *Id.* When the facts are viewed in the light most favorable to Plaintiffs, we find that there is a question of fact as to whether or not the circumstances of the parties' interaction prior to signing the loan give rise to a fiduciary relationship and consequently created a fiduciary duty for Defendant.[5]

### B. Negligent Misrepresentation

[4] Plaintiffs argue that Defendant negligently misrepresented that the new loan would receive first priority status. "The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland,* 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988)(citations omitted). In addition, "parties to a contract impose upon themselves the obligation to perform it; [however,] the law [also] imposes upon each of them the obligation to perform it with ordinary care . . . ." *See Toone v. Adams,* 262 N.C. 403, 407, 137 S.E.2d 132, 135 (1964).

Given our decision to remand on the issue of whether a fiduciary duty existed, we remand on this issue as well to determine, if a duty existed, whether Defendant negligently misrepresented the priority the loan would receive.

### III. The Secure and Fair Enforcement Mortgage Licensing Act

[5] Plaintiffs argue that the trial court erred in dismissing the statutory claims under § 53-244.110 of the Secure and Fair Enforcement

---

5. Specifically, a question of fact exists as to whether or not Defendant sought to give legal advice to Plaintiffs. In either event, when a financial institution undertakes to provide a customer with a service beyond that inherent in the creditor-debtor relationship, it must do so reasonably and with due care.

Mortgage Licensing Act (the S.A.F.E. Act), N.C. Gen. Stat. § 53-244.110 (2011), and its predecessor the Mortgage Lending Act (MLA), N.C. Gen. Stat. §§ 53-243.01 to -543.18 (2001)(repealed 2009). We disagree.

"It is a well-established rule of construction in North Carolina that a statute is presumed to have prospective effect only and should not be construed to have a retroactive application unless such an intent is clearly expressed or arises by necessary implication from the terms of the legislation." *State v. Green*, 350 N.C. 400, 404, 514 S.E.2d 724, 727 (1999)(citation omitted). "The application of a statute is deemed 'retroactive' or 'retrospective' when its operative effect is to alter the legal consequences of conduct or transactions completed prior to its enactment." *Gardner v. Gardner*, 300 N.C. 715, 718, 268 S.E.2d 468, 471 (1980). For example, in *Estridge v. Ford Motor Co.*, 101 N.C. App. 716, 718-19, 401 S.E.2d 85, 87 (1991), this Court refused to apply the North Carolina "Lemon Law" under the New Motor Vehicles Warranties Act, N.C. Gen. Stat. §§ 20-351 to -351.10 (1990), to a plaintiff's vehicle lease where "the rights and obligations involved in the plaintiff's claim [arose] out of the lease contract which was executed . . . prior to the time when the statute came into effect in North Carolina" and there was no indication that the legislature intended such retroactive application. *Estridge*, 101 N.C. App. at 718, 401 S.E.2d at 86.

Here, it is not proper to retroactively apply the S.A.F.E. Act to the circumstances of Plaintiffs' loan with Defendant. The S.A.F.E. Act was enacted in July of 2009. Secure and Fair Enforcement Mortgage Licensing Act, ch. 374, 2009 N.C. Sess. Laws 681 (codified at N.C. Gen. Stat. § 53-244.010 to 53-244.121 (2011)). The legislature expressed clear intent that it be applied prospectively:

> Except as otherwise provided by Section 5 of this act [(pertaining to individuals licensed under the old requirements and the effect of the Act on their licensure status)], this act becomes effective July 31, 2009, and applies to all applications for licensure as a mortgage loan originator, mortgage lender, mortgage broker, or mortgage servicer filed on or after that date.

ch. 374, § 6, 2009 N.C. Sess. Laws at 709. As in *Estridge*, Plaintiffs' claims arise out of the negotiations and contract executed prior to the enactment of this statute. In fact, Plaintiffs signed the contract in 2007, two years before the S.A.F.E. Act came into existence. Thus, it

is inapplicable to the facts of this case and the trial court properly dismissed the claim that Defendant violated this Act.

**[6]** With respect to Plaintiffs' reliance on the MLA, we find Plaintiffs' claim abandoned. "Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned." N.C. R. App. P. 28(b)(6). Plaintiffs fail to provide any provision of the MLA that creates a statutory duty applicable to the case sub judice. Plaintiffs' brief merely alleges that the MLA had a similar purpose to the S.A.F.E. Act in protecting consumers in mortgage loan transactions. In order to vaguely establish that the MLA created duties of disclosure, Plaintiffs brief then cites *Guyton v. FM Lending Servs., Inc.*, 199 N.C. App. 30, 681 S.E.2d 465 (2009), where this Court found the MLA created a duty for a lender's to notify the borrower that the property was in a flood plain. *Id.* at 39-44, 681 S.E.2d at 473-76. However, Plaintiffs fail to provide any argument as to how that case or the MLA itself directly apply to the case *sub judice*. Plaintiffs' mere statement that "issues of material fact exist as to whether [Defendant] violated its statutory standards of conduct" is insufficient where there is no argument as to what that statutory standard is or how it was violated. This Court will not make the argument for Plaintiffs.

Affirmed in part, Reversed and Remanded in part.

Judges STROUD and HUNTER, JR. concur.