IN THE SUPREME COURT OF NORTH CAROLINA

No. 51PA13

FILED 12 JUNE 2014

JACQUES A. DALLAIRE and wife, FERNANDE DALLAIRE

v.

BANK OF AMERICA, N.A.; HOMEFOCUS SERVICES, LLC; and LANDSAFE SERVICES, LLC

On discretionary review pursuant to N.C.G.S. §  7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 738 S.E.2d 731 (2012), affirming in part and reversing and remanding in part an order of summary judgment entered on 14 February 2012 by Judge W. David Lee in Superior Court, Cabarrus County.  Heard in the Supreme Court on 17 February 2014.

*Ferguson, Scarbrough, Hayes, Hawkins & DeMay, P.A., by John F. Scarbrough and James E. Scarbrough, for plaintiff-appellees.*

*McGuireWoods, LLP, by Robert A. Muckenfuss, for defendant-appellant Bank of America, N.A.*

*J.L. Pottenger, Jr. for Jerome N. Frank Legal Services Organization Mortgage Foreclosure Clinic, amicus curiae.*

*Poyner Spruill LLP, by Edwin M. Speas, Jr., Andrew H. Erteschik, and Lynn C. Percival IV, for North Carolina Bankers Association, amicus curiae.*

*Laura E. Collins for University of North Carolina School of Law Consumer Financial Transactions Clinic, amicus curiae.*

NEWBY, Justice.

In this case we consider whether a loan officer's statements about lien priority in a home mortgage transaction support a borrower's claims for breach of fiduciary duty and negligent misrepresentation against the lender. Generally, the home loan process is regarded as an arm's length transaction between parties of equal bargaining power and, absent exceptional circumstances, will not give rise to a fiduciary duty. Because a loan officer's initial discussion of lien priority in the context of an ordinary home mortgage transaction is not an exceptional circumstance, it does not create a fiduciary duty. In addition, a borrower cannot establish a claim for negligent misrepresentation based on a loan officer's statements about lien priority if the borrower fails to make reasonable inquiry into the validity of those statements. Because no fiduciary duty existed and plaintiffs did not forecast evidence that they made reasonable inquiry, the trial court correctly granted summary judgment for the lender on both claims. Accordingly, we reverse the decision of the Court of Appeals.

Jacques and Fernande Dallaire purchased a home as their primary residence in 1998 for $173,660. Seven years later the Dallaires filed Chapter 7 bankruptcy stemming from unrelated business debts. At that time the Dallaires' home was encumbered by three liens. Bank of America held a first priority deed of trust on a mortgage note for $138,900 and a second priority home equity line deed of trust for $25,000. Branch Banking & Trust (BB&T) held a third priority lien securing a business loan in the amount of $241,449.37. The bankruptcy court's order

discharged the Dallaires' personal liability on all three liens, but the liens remained attached to their home. *In re Dallaire*, Ch. 7 Case No. 05-53774 (M.D.N.C. Jan. 25, 2006).

A year after their bankruptcy discharge, the Dallaires received an advertisement in the mail from Bank of America offering home mortgage refinancing services. In response, the Dallaires submitted a loan application, each checking the box indicating "No" when asked if they had declared bankruptcy within the past ten years. According to Mr. Dallaire, however, at the time of the loan application, he disclosed the bankruptcy to a Bank of America loan officer who repeatedly assured Mr. Dallaire "the bankruptcy and BB&T mortgage would not be a problem" and that "the new [Bank of America] loan would be secured by a first lien mortgage against our home."

In accordance with its routine procedures, Bank of America engaged HomeFocus Services, LLC (HomeFocus)[1] to prepare a title report for Bank of America's use. HomeFocus discovered the BB&T lien, prompting Bank of America to contract with LSI Title Agency (LSI) to perform curative title work. As part of that work, an LSI representative spoke with Mr. Dallaire and obtained from him copies of the couple's bankruptcy petition and discharge order. LSI advised Bank of America that the loan was cleared to close, apparently based on the mistaken belief

---

[1] HomeFocus Services, LLC is now known as LandSafe Services, LLC. For consistency, we will use the name of the LLC at the time of the events at issue here.

that the BB&T lien on the Dallaires' home had been extinguished completely in bankruptcy.

Bank of America loaned the Dallaires $166,000 in exchange for a deed of trust on their home. Under the terms of the loan agreement, the Dallaires were required to "promptly discharge" any liens which Bank of America determined to have priority over the loan at issue, provided that Bank of America, in its discretion, notified the Dallaires of any such lien. The Dallaires used the loan proceeds to pay off the home's first and second priority liens held by Bank of America, as well as two car loans, all the while reducing their overall monthly payments. Bank of America did not inform the Dallaires of the BB&T lien, and that lien was neither paid off nor subject to a subordination agreement. Consequently, the refinancing resulted in the BB&T lien attaining first priority status on the house, while the new Bank of America loan, which now carried with it personal liability for the Dallaires, took a second lien position. This was not the outcome desired by the Dallaires or Bank of America, as both parties anticipated the new lien would have first priority. Three years after the refinancing, a family friend of the Dallaires expressed interest in purchasing the Dallaires' home. This prompted the Dallaires to contact their bankruptcy attorney who, after conducting a title search, discovered that the BB&T lien was senior to the Bank of America lien.

Upon learning of the status of the Bank of America lien, the Dallaires filed a complaint in Superior Court, Cabarrus County, against Bank of America and

Homefocus. According to the Dallaires, the junior status of Bank of America's lien substantially decreased the marketability and value of their home and exposed them to increased personal liability. The Dallaires' complaint alleged, in relevant part, negligent title search, negligent misrepresentation, breach of contract, and breach of fiduciary duty. Defendants moved for summary judgment on all claims. Regarding the Dallaires' fiduciary duty claim, defendants argued that no fiduciary relationship existed and that the transaction never rose to anything more than a routine encounter between creditor and debtor. As to the Dallaires' negligent misrepresentation claim, defendants insisted the Dallaires failed to demonstrate they had made reasonable inquiry into Bank of America's lien priority statements. The trial court granted defendants' motion for summary judgment on all claims, and the Dallaires appealed.

At the Court of Appeals the Dallaires argued, *inter alia*, that the traditional arm's length view of borrower-lender relationships does not comport with the modern loan origination and securitization process in which lenders exercise total control over the process and borrowers put complete trust in the lenders. According to the Dallaires, this "new reality" requires a corresponding evolution in the law whereby lenders should be considered fiduciaries. As for their negligent misrepresentation claim, the Dallaires contended that Bank of America did not use reasonable care in determining the lien's priority.

Concerning the Dallaires' breach of fiduciary duty claim, the Court of Appeals found that "there is a question of fact as to whether or not the circumstances of the parties' interaction prior to signing the loan give rise to a fiduciary relationship and consequently created a fiduciary duty for Defendant." *Dallaire v. Bank of Am.*, ___ N.C. App. ___, ___, 738 S.E.2d 731, 735 (2012). The Court of Appeals reasoned that Bank of America's alleged assurance of a first priority lien on the Dallaires' new mortgage loan was an act beyond the scope of a normal debtor-creditor relationship. *Id.* at ___ n.5, 738 S.E.2d at 735 n.5. When taken in the light most favorable to the Dallaires, the Court of Appeals concluded such actions constituted circumstances sufficient to establish a fiduciary relationship and thus, summary judgment was inappropriate. Consistent with its fiduciary duty holding, the Court of Appeals also remanded the Dallaires' negligent misrepresentation claim "to determine, if a duty existed, whether Defendant negligently misrepresented the priority the loan would receive." *Id.* at ___, 738 S.E.2d at 736. The Court of Appeals found no merit in the Dallaires' arguments regarding their other claims.

Bank of America sought discretionary review, which we allowed. *Dallaire v. Bank of Am.*, ___ N.C. ___, 747 S.E.2d 535 (2013). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2013). We review de novo an order

granting summary judgment. *Howerton v. Arai Helmet, Ltd.,* 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004) (citation omitted).

Though difficult to define in precise terms, a fiduciary relationship is generally described as arising when "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Green v. Freeman*, 367 N.C. 136, 141, 749 S.E.2d 262, 268 (2013) (quoting *Dalton v. Camp,* 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001)) (quotation marks omitted); *see also Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928) (describing fiduciaries as being held to a standard "stricter than the morals of the market place" and adding that "[n]ot honesty alone, but the punctilio of an honor the most sensitive, is the standard of behavior"). Fiduciary relationships are characterized by "confidence reposed on one side, and resulting domination and influence on the other." *Dalton*, 353 N.C. at 651, 548 S.E.2d at 708 (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)) (emphasis and quotation marks omitted). These characteristics of a fiduciary relationship are readily apparent, for example, in the relationship of spouses, *Eubanks v. Eubanks*, 273 N.C. 189, 195, 159 S.E.2d 562, 567 (1968) ("The relationship between husband and wife is the most confidential of all relationships . . . ." (citation omitted)), attorney and client, *Fox v. Wilson*, 85 N.C. App. 292, 299, 354 S.E.2d 737, 742 (1987) (emphasizing the trust and confidence inherent in the attorney-client relationship), and trustee and beneficiary,

*Wachovia Bank & Trust Co. v. Johnston*, 269 N.C. 701, 711, 153 S.E.2d 449, 457 (1967) (recognizing the fundamental duty of a trustee "to maintain complete loyalty to the interests of" his beneficiary), and between partners to a partnership, *Casey v. Grantham*, 239 N.C. 121, 124-25, 79 S.E.2d 735, 738 (1954) (acknowledging partners' duty to act in "utmost good faith" in their dealings with one another). Common to all these relationships is a heightened level of trust and the duty of the fiduciary to act in the best interests of the other party.

Ordinary borrower-lender transactions, by contrast, are considered arm's length and do not typically give rise to fiduciary duties. *Sec. Nat'l Bank of Greensboro v. Educators Mut. Life Ins. Co.*, 265 N.C. 86, 95, 143 S.E.2d 270, 276 (1965) ("There was no fiduciary relationship; the relation was that of debtor and creditor."); *see also Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699 (The " 'mere existence of a debtor-creditor relationship between [the parties does] not create a fiduciary relationship.' " (alteration in original) (citations omitted)), *disc. rev. denied*, 332 N.C. 482, 421 S.E.2d 350 (1992). In other words, the law does not typically impose upon lenders a duty to put borrowers' interests ahead of their own. Rather, borrowers and lenders are generally bound only by the terms of their contract and the Uniform Commercial Code. *Thompson*, 107 N.C. App. at 61, 418 S.E.2d at 699; *see also Camp v. Leonard*, 133 N.C. App. 554, 560, 515 S.E.2d 909, 913 (1999) (citing and applying previous Court of Appeals cases holding that "a lender is only obligated to perform those duties expressly

provided for in the loan agreement to which it is a party"). Nonetheless, because a fiduciary relationship may exist "under a variety of circumstances," *Abbitt*, 201 N.C. at 598, 160 S.E. at 906, it is possible, at least theoretically, for a particular bank-customer transaction to "give rise to a fiduciary relation given the proper circumstances." *Thompson,* 107 N.C. App. at 61, 418 S.E.2d at 699 (citation omitted).

Those circumstances are not present in the case at hand. A loan officer's mere assertion that the Dallaires "could obtain a first priority lien mortgage loan," *Dallaire,* ___ N.C. App. at ___, 738 S.E.2d at 735, is insufficient to take the parties' relationship out of the borrower-lender context or transform it from arm's length to fiduciary. When taken in the light most favorable to the Dallaires, the record provides no basis for concluding that they reposed in the Bank of America loan officer the special confidence required for a fiduciary relationship. *See Green*, 367 N.C. at 141, 749 S.E.2d at 268; *see also Thompson,* 107 N.C. App. at 61, 418 S.E.2d at 699 ("[A]n ordinary debtor-creditor relationship generally does not give rise to such a 'special confidence' . . . ."). Thus, the trial court did not err in granting summary judgment for Bank of America on the Dallaires' breach of fiduciary duty claim.

The Dallaires next contend that there was sufficient evidence to create an issue of material fact regarding their claim for negligent misrepresentation. They assert that at the time of their application the Bank of America loan officer

repeatedly assured them the new loan would be secured by a first lien mortgage. The Dallaires stress that determining the effect of a bankruptcy on primary residence liens is a complex task, and that Bank of America was negligent in "relying on non-lawyers" to answer "this quintessentially legal question." According to the Dallaires, they reasonably relied on this negligently prepared information, resulting in substantial harm to their net worth.

"The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988) (citations omitted). A party cannot establish justified reliance on an alleged misrepresentation if the party fails to make reasonable inquiry regarding the alleged statement. *Pinney v. State Farm Mut. Ins. Co.,* 146 N.C. App. 248, 256, 552 S.E.2d 186, 192 (2001) ("It has also been held that when a party relying on a 'misleading representation could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence.' " (citation omitted)), *disc. rev. denied*, 356 N.C. 438, 572 S.E.2d 788 (2002). Whether a party's reliance is justified is generally a question for the jury, except in instances in which " 'the facts are so clear as to permit only one conclusion.' " *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP,*

350 N.C. 214, 225, 513 S.E.2d 320, 327 (1999) (quoting Restatement (Second) of Torts § 552 cmt. e (1977)) (emphasis omitted).

Assuming *arguendo* that Bank of America owed a duty to the Dallaires beyond the terms of the loan agreement, the Dallaires have produced no evidence suggesting they made reasonable inquiry regarding the loan officer's alleged misstatements of lien priority. *See, e.g.*, *State Props., LLC v. Ray*, 155 N.C. App. 65, 73, 574 S.E.2d 180, 186 (2002) ("Reliance is not reasonable if a plaintiff fails to make any independent investigation . . . ." (citing *Calloway v. Wyatt,* 246 N.C. 129, 97 S.E.2d 881 (1957))), *disc. rev. denied*, 356 N.C. 694, 577 S.E.2d 889 (2003); *Simms v. Prudential Life Ins. Co. of Am.,* 140 N.C. App. 529, 533, 537 S.E.2d 237, 240 (2000) (When "the purchaser has full opportunity to make pertinent inquiries but fails to do so through no artifice or inducement of the seller, an action in [negligent misrepresentation] will not lie." (alteration in original) (citations and quotation marks omitted)), *disc. rev. denied*, 353 N.C. 381, 547 S.E.2d 18 (2001). As the Dallaires themselves have acknowledged, determining the effects of a previous bankruptcy on a home's liens is complicated. Yet, there is no indication the couple made pertinent inquiries or sought outside advice about the liens in 2007 as, for example, they did in 2010 when preparing to sell their home. The Dallaires have also failed to offer evidence that Bank of America denied them the opportunity to investigate the loan officer's initial assertions. *See, e.g., Oberlin Capital, L.P. v. Slavin,* 147 N.C. App. 52, 60, 554 S.E.2d 840, 846-47 (2001) (affirming the trial

court's dismissal of a party's negligent misrepresentation claim because the plaintiff failed to allege it was denied the opportunity to investigate). Because the Dallaires have put forth no evidence that they made inquiry or were prevented from doing so, they have failed to demonstrate the justified reliance necessary to support their negligent misrepresentation claim. Thus, the trial court did not err in granting summary judgment for Bank of America on the Dallaires' negligent misrepresentation claim.

Under the facts of this case, the Dallaires' home loan refinancing with Bank of America was an arm's length transaction and did not give rise to a claim for breach of fiduciary duty. In addition, the Dallaires failed to demonstrate justified reliance on Bank of America's alleged misstatements in support of their negligent misrepresentation claim. The Court of Appeals erred in overturning the trial court's order granting summary judgment on both claims. Accordingly, we reverse the decision of the Court of Appeals.

REVERSED.

Justice BEASLEY did not participate in the consideration or decision of this case.