IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-213

No. COA20-382

Filed 18 May 2021

Pender County, No. 19 CVS 0046

CHRISTOPHER D. MURRAY, Plaintiff,

v.

DEERFIELD MOBILE HOME PARK, LLC and DONALD W. LEWIS, Defendants.

Appeal by plaintiff and cross-appeal by defendants from order entered 13 November 2019 by Judge Andrew T. Heath in Pender County Superior Court. Heard in the Court of Appeals 14 April 2021.

> *Hatch, Little & Bunn, L.L.P., by Justin R. Apple and David M. Yopp, for plaintiff-appellant/cross-appellee.*
>
> *Reiss & Nutt, PLLC, by W. Cory Reiss, for defendant-appellees/cross-appellants.*

TYSON, Judge.

¶ 1     Christopher D. Murray ("Plaintiff") appeals from an order entered granting Deerfield Mobile Home Park, LLC ("Deerfield") and Donald W. Lewis' ("Defendant") (collectively "Defendants") motion for summary judgment under North Carolina Rule of Civil Procedure 56. Defendants' cross-appeal asserts the trial court erred in granting Plaintiff's motion for summary judgment on Defendants' claims under North Carolina Rule of Civil Procedure 56. We affirm the trial court's orders.

## I.     Background

### A. Defendants' Properties

Defendant and wife, Norean G. Lewis, purchased 7.09 acres of land in Pender County as tenants by the entirety in April 1978. These 7.09 acres are located at 12165 U.S. Highway 117 South. The Lewises moved into a house on the 7.09-acre parcel in 1983. Defendant began leasing mobile homes located on the parcel in 1984.

In 2005, Defendant formed Deerfield Mobile Home Park, LLC as a single-member North Carolina limited liability company to operate the mobile home park. Deerfield's operating agreement lists Donald Lewis as its sole member and manager. The Lewises subdivided the original 7.09 acres into two separate parcels.

The subdivision of the 7.09 acres was completed pursuant to a plat map and deed recorded in the Pender County Registry on 24 February 2006. The new parcels were a 5.355-acre parcel containing the Deerfield Mobile Home Park and the 1.721 acres containing the Lewises' home.

In 2006, the Lewises conveyed the 5.355 acres containing the Deerfield Mobile Home Park to Deerfield. Defendant owns nineteen of the mobile homes in the Deerfield Mobile Home Park in his individual capacity. The Lewises' home on the 1.721-acre parcel remained owned as tenants by the entirety.

Defendant purchased a 4.93-acre parcel while married to Mrs. Lewis, containing a single-family rental unit accessible only via a private dirt road at 4655

Carolina Beach Road in New Hanover County. This property is leased for $650 per month. Mrs. Lewis holds a marital interest in the property. Defendant could only convey his interest subject to Mrs. Lewis' marital interest, without joinder of her signature. *See* N.C. Gen. Stat. § 39-9 (2019); *Hughes v. Hughes*, 102 N.C. 236, 102 N.C. 262, 9 S.E. 437, 9 S.E. 437 (1889).

¶ 7        Defendant was diagnosed with terminal lung cancer in June 2018. Around August 2018 Defendant approached Plaintiff at a restaurant, disclosed his cancer diagnosis, and stated his desire to sell the 5.355-acre Deerfield parcel, the 1.721-acre parcel containing the personal residence, and the 4.93-acre parcel containing the single-family rental unit at 4655 Carolina Beach Road.

## B. Plaintiff's involvement

¶ 8        Plaintiff is in the business of buying and developing real property. He is not a licensed real estate broker. Defendant desired to retain a life estate in the 1.721-acre parcel containing the personal residence along with a transition period for Mrs. Lewis to continue to live there after his death. Defendant told Plaintiff he wanted a combined sum of $1,500,000 for the three properties.

¶ 9        Plaintiff proposed a sale of the three properties to Robert Huckabee. Plaintiff had arranged previous real estate transactions with Huckabee, and he knew Huckabee had owned at least one other mobile home park. Plaintiff "was going to represent [Defendant's] interests" negotiating with Huckabee. Plaintiff never

represented himself to be a real estate broker. Defendant acknowledges he had no special relationship with Plaintiff. Plaintiff was to receive a $10,000 consulting fee for negotiating the deal with Huckabee.

¶ 10    Plaintiff encouraged Defendant to obtain formal appraisals of the three properties prior to selling, but Defendant declined to procure appraisals because he "knew what [he] paid for it, and [he] kn[ew] what [he] want[ed] to sell it for." Defendant believed based upon Plaintiff's "judgment and experience" in selling real estate the "market . . . would bring his asking price."

¶ 11    Defendant described Plaintiff's role as follows:

> I trusted [Plaintiff] to be looking out for my best interests, as he had said he was doing, and I trusted that he was using his greater knowledge about real estate to make sure I got true market value. [Plaintiff] said he was my consultant on selling the properties to [Huckabee] for the best price I could get.

¶ 12    Huckabee informed Plaintiff he was interested in purchasing the three properties. The men conducted a site visit of Deerfield Mobile Home Park. Plaintiff informed Defendant of Huckabee's interest in the three properties. Plaintiff negotiated terms of the sale during subsequent visits with Defendant. Defendant agreed to a lump sum price of $1,060,000 to sell all three properties.

¶ 13    Defendant prepared a one-page document memorializing their agreement to the transaction entitled "Agreement to Sell Properties." On 6 October 2018,

Defendant and Plaintiff both signed the one-page document. The "Agreement to Sell Properties" included the 5.355-acre parcel containing the Deerfield Mobile Home Park, the 1.721-acre parcel containing the Lewises' personal residence, and the 4.93-acre parcel containing the single-family rental unit at 4655 Carolina Beach Road. The "Agreement to Sell Properties" provided for payment of Plaintiff's $10,000 consulting fee, monthly rental of the Lewises' residence after closing, and a transition time for Mrs. Lewis following Defendant's death.

## C. Amendments to Agreement

¶ 14        Huckabee did not believe the "Agreement to Sell Properties" was binding on the parties. He had an agent draft a "legitimate real estate agreement." Huckabee also informed Plaintiff he did not want to purchase the 4.93-acre parcel containing the single-family rental unit on Carolina Beach Road in New Hanover County. Huckabee requested Plaintiff to ask Defendant to separate the purchase prices of the properties in the "Agreement to Sell Properties." Defendant agreed to list separate purchase prices of the properties in a 17 October 2018 document, wherein handwritten prices were affixed to each property listed on the "Agreement to Sell Properties." The 17 October 2018 document priced the 5.355-acre parcel containing the Deerfield Mobile Home Park and the 1.721-acre parcel containing the personal residence at $750,000, and priced the 4.93-acre parcel containing the single-family rental unit at 4655 Carolina Beach Road at $300,000.

¶ 15        Plaintiff and Huckabee stopped communicating about the transaction. Plaintiff believed Huckabee did not want to complete the transaction due to an unrelated dispute between the two men. Huckabee believed Plaintiff had informed him Defendant's daughter "wanted to stop this transaction. She had another real estate [broker] involved and another buyer[.]"

¶ 16        Huckabee maintained in his deposition he continued to have interest in the properties and would be able to purchase all three properties in October 2018. After Plaintiff informed Huckabee that Defendant was no longer interested in selling to him, Huckabee heard nothing more about the transaction until being subpoenaed for a deposition.

¶ 17        Plaintiff informed Defendant that Huckabee had stopped responding and asserted Huckabee was no longer interested in purchasing the properties. Defendant responded by reiterating his need to sell the properties as quickly as possible. Defendant asked Plaintiff "how fast [could he] get him some big money." When Plaintiff asked what amount constituted "big money," Defendant responded "$500,000 or more."

¶ 18        Plaintiff told Defendant he would require seller financing to purchase the properties. Defendant told Plaintiff he would consider some seller financing. Plaintiff responded he would also confer with other lenders about financing the purchase. Plaintiff also asked for a year's extension to pay the full amount. A short

time later, Defendant informed Plaintiff he was not interested in seller financing and inquired if Plaintiff could pay the full amount in a shorter time due to his terminal prognosis. Defendant provided financial information and tax returns from Deerfield for lenders to review.

### D. Hoosier Daddy, LLC

¶ 19        Plaintiff contacted Jack J. Carlisle to determine whether he was interested in purchasing the three properties. Carlisle informed Plaintiff he was willing to purchase the 4.93-acre parcel containing the single-family rental unit at 4655 Carolina Beach Road and would finance Plaintiff's purchase of the 5.355-acre parcel containing the Deerfield Mobile Home Park and the 1.721-acre parcel containing the personal residence. Carlisle gave Plaintiff a check from a limited liability company, Hoosier Daddy, LLC for $800,000. The check required the signatures of Plaintiff, Defendant, and an attorney to be negotiated.

¶ 20        Plaintiff met with Defendant on 24 October 2018. Plaintiff offered to purchase all three properties for $800,000 and handed Defendant the check from Hoosier Daddy. Plaintiff had written on a copy of the 17 October 2018 document, during the meeting as values for the properties: $400,000 for 5.355-acre parcel containing the Deerfield Mobile Home Park, $250,000 for the 1.721-acre parcel containing the personal residence, and $250,000 for the 4.93-acre parcel containing the single-family rental unit at 4655 Carolina Beach Road, totaling $900,000. Beneath the values,

Plaintiff wrote "Will accept 5% less/purchase price $850,000." Defendant and Plaintiff both signed the bottom of this document. Plaintiff believed this document gave him the option to buy all three properties or just some of them at the listed price or 5% less.

¶ 21       Plaintiff returned on 7 November 2018 with a proposed contract. Plaintiff told Defendant he could not obtain more than the $800,000 check from Hoosier Daddy. Defendant told Plaintiff "we can't do business. You're . . . trying to squeeze me too much. We can't do business."

### E.  Listing with a Broker

¶ 22       Defendant hired a licensed real estate broker to list the 5.355-acre parcel containing the Deerfield Mobile Home Park and the 1.721-acre parcel containing the personal residence for sale. This broker presented an offer from another prospective buyer.

¶ 23       Defendant wanted to sell the 1.721-acre parcel containing the marital residence together with the Deerfield Mobile Home Park. Defendant believed the combined sale of the properties would provide the best value for his residence, another buyer of the house alone would not pay as much to be in front of a mobile home park, and the 1.721 acres provided expansion room for the new owner of the Deerfield Mobile Home Park. Defendant reiterated to Plaintiff they would not be closing on the sale of any properties.

**F. Litigation**

Plaintiff filed a complaint on 17 January 2019, asserting breach of contract against Defendants. Plaintiff docketed a notice of *Lis Pendens* with the complaint in Pender County Superior Court concerning the 5.355-acre parcel containing the Deerfield Mobile Home Park and the 1.721-acre parcel containing the Lewises' personal residence.

Plaintiff also filed a complaint on 17 January 2019 asserting breach of contract concerning the 4.93-acre parcel containing the single-family rental unit at 4655 Carolina Beach Road in New Hanover County Superior Court. The action in New Hanover County Superior Court is being held in abeyance pending resolution of this case.

Defendants filed counterclaims asserting constructive fraud, undue influence, and duress, and sought recission of the contract. Both Plaintiff and Defendants filed motions for summary judgment. The trial court entered an order granting Defendants' motion for summary judgment on Plaintiff's claims and granting Plaintiff's motion for summary judgment on Defendant's counterclaims on 13 November 2019. Plaintiff appeals. Defendants cross-appeal.

## II. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2019).

## III. Issues

Plaintiff argues the trial court erred by granting Defendants' motion for summary judgment and by denying his motion for summary judgment and for specific performance of the contract.

Defendants argue the trial court erred by granting Plaintiff's motion for summary judgment on the counterclaims. Defendants further argue the trial court abused its discretion and erred by denying their proposed amendments to the counterclaims.

## IV.  Cross Motions for Summary Judgment

### A. Standard of Review

North Carolina Rule of Civil Procedure 56(c) entitles a movant to obtain summary judgment upon demonstrating "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" shows there is "no genuine issue as to any material fact"  and the movant is "entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2019).

A genuine issue of material fact is one supported by evidence that would "persuade a reasonable mind to accept a conclusion." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002) (citation omitted). "An issue is material if the facts alleged would . . . affect the result of the action." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972).

"The party moving for summary judgment bears the burden of establishing

that there is no triable issue of material fact." *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002) (citation omitted). A party may meet this burden "by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim." *Id.* (citation and internal quotation marks omitted).

¶ 33        When the court reviews the evidence at summary judgment, "[a]ll inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Boudreau v. Baughman*, 322 N.C. 331, 343, 368 S.E.2d 849, 858 (1988) (citation omitted). On appeal, "[t]he standard of review for summary judgment is de novo." *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007) (citation omitted).

### B. Plaintiff's Appeal: Defendant's Motion for Summary Judgment

#### 1.        *Validity of Contract*

¶ 34        Plaintiff argues the trial court erred by granting Defendants' motion for summary judgment. He asserts the parties formed a severable contract that complies with the statute of frauds and the 24 October 2018 document is sufficient to satisfy the statute of frauds. N.C. Gen. Stat. § 22-2 provides:

>            All contracts to sell or convey any lands, tenements or

hereditaments, or any interest in or concerning them, . . . shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized.

N.C. Gen. Stat. § 22-2 (2019).

¶ 35 Plaintiff concedes Defendant, as a tenant by the entirety, could not convey the 1.721-acre parcel containing the personal residence without joinder of his wife. Plaintiff asserts 24 October 2018 document is severable from the 4.93-acre parcel containing the single-family rental unit at 4655 Carolina Beach Road, which forms the New Hanover County case, and for sale of the 5.355-acre parcel containing the Deerfield Mobile Home Park.

¶ 36 "The well-settled elements of a valid contract are offer, acceptance, consideration, and mutuality of assent to the contract's essential terms." *Se. Caissons, LLC v. Choate Constr. Co.*, 247 N.C. App. 104, 110, 784 S.E.2d 650, 654 (2016) (citation omitted). "A contract is simply a promise supported by consideration, which arises . . . when the terms of an offer are accepted by the party to whom it is extended." *McLamb v. T.P., Inc.*, 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005) (citation omitted). "Generally, a party seeking to enforce a contract has the burden of proving the essential elements of a valid contract." *Orthodontic Ctrs. Of Am., Inc. v. Hanachi*, 151 N.C. App. 133, 135, 564 S.E.2d 573, 575 (2002) (citation omitted).

¶ 37 "The heart of a contract is the intention of the parties, which is ascertained by

the subject matter of the contract, the language used, the purpose sought, and the situation of the parties at the time." *Pike v. Wachovia Bank & Trust Co.*, 274 N.C. 1, 11, 161 S.E.2d 453, 462 (1968) (citations omitted).

¶ 38        "One of the most fundamental principles of contract interpretation is that ambiguities are to be construed against the party who prepared the writing." *Chavis v. S. Life Ins. Co.*, 318 N.C. 259, 262, 347 S.E.2d 425, 427 (1986).

¶ 39        One hundred and thirty years ago, our Supreme Court examined the severability of a contract with unenforceable provisions, holding:

> A contract is entire, and not severable, when by its terms, nature and purpose it contemplates and intends that each and all of its parts, material provisions, and the consideration, are common each to the other and interdependent. Such a contract possesses essential oneness in all material respects. The consideration of it is entire on both sides. Hence, where there is a contract to pay a gross sum of money for a certain definite consideration, it is entire, and not severable or apportionable in law or equity. Thus, where a particular thing is sold for a definite price, the contract is an entirety, and the purchaser will be liable for the entire sum agreed to be paid. And so, also, when two or more things are sold together for a gross sum, the contract is not severable. The seller is bound to deliver the whole of the things sold, and the buyer to pay the whole price, in the absence of fraud.
>
> . . .
>
> "[A] severable contract is one in its nature and purpose susceptible of division and apportionment, having two or more parts, in respect to matters and things contemplated and embraced by it, not necessarily dependent upon each

other, nor is it intended by the parties that they shall be.
*Wooten v. Walters*, 110 N.C. 251, 254-55, 14 S.E. 734, 735 (1892).

¶ 40 Plaintiff argues the 24 October 2018 amended agreement constituted a valid and severable contract to convey. This document listed and assigned separate prices to each of the three properties. The document is signed by Defendant and Plaintiff. Defendants argue the 24 October 2018 agreement does not constitute a valid contract.

¶ 41 "The essence of any contract is the mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds." *Snyder v. Freeman*, 300 N.C 204, 218, 266 S.E.2d 593, 602 (1980). Our Supreme Court has held: "For an agreement to constitute a valid contract, the parties' minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." *Chappell v. Roth*, 353 N.C. 690, 692, 548 S.E.2d 499, 500 (2001) (citations and internal quotation marks omitted).

### 2. *Unilateral Option Agreement*

¶ 42 "[A]n option is a contract by which the owner agrees to give another the exclusive right to buy property at a fixed price within a specified time. In effect, an owner of property agrees to hold his offer [to sell] open for a *specified period of time*." *Normile v. Miller*, 313 N.C. 98, 105, 326 S.E.2d 11, 16 (1985) (emphasis supplied) (citations and internal quotation marks omitted).

### a. *Specified Date*

¶ 43        The writing must contain an express "promise or agreement that [the offer will] remain open for a specified period of time" for an option contract to be valid. *Id.* An option contract does not exist if "there is no language indicating that [the seller] in any way agreed to sell or convey [their] real property to [a prospective buyer] at their request within a *specified period of time.*" *Id.* at 106, 326 S.E.2d at 16 (emphasis supplied).

¶ 44        The 24 October 2018 agreement contains no provisions requiring Defendants to convey the listed properties by a specific date. Nothing required Plaintiff to actually purchase any single or combination of the three properties. Nothing shows the 24 October 2018 document represented anything more than a revocable offer to sell that Defendants could revoke at any period of time prior to acceptance according to its terms.

### b. Consideration

¶ 45        "[An] option contract must also be supported by valuable consideration." *Id.* at 105, 326 S.E.2d at 16. The 24 October 2018 agreement along with Plaintiff's pleadings, depositions, and affidavits do not provide for any consideration. The record is devoid of language for any deposit, due diligence fee, or earnest money deposit paid by Plaintiff for Defendant to forebear selling his properties. No valid option contract existed to which Plaintiff could allege a breach thereof by Defendants.

¶ 46        Without a valid and enforceable option contract, no claim for breach of contract

arises. The trial court properly entered summary judgment for Defendants on Plaintiff's breach of contract claims. Plaintiff's arguments are overruled.

### C. Defendants' Appeal: Plaintiff's Motion for Summary Judgment

¶ 47        Defendants argue the trial court erred by granting Plaintiff's motion for summary judgment and assert their claims of undue influence, duress, fraud, and for recission of the documents raise genuine issues of material fact to preclude summary judgment for Plaintiff. We have held no enforceable contract exists between the parties, Defendants counterclaims for undue influence, duress, and recission are therefore moot.

### *1. Fraud*

¶ 48        Fraud may be actual or constructive. *Terry v. Terry*, 302 N.C. 77, 82, 273 S.E.2d 674, 677 (1981). Constructive fraud arises when a confidential or fiduciary relationship exists. *Id.* at 83, 273 S.E.2d at 677.

¶ 49        "Allegations of fraud are subject to more exacting pleading requirements than are generally demanded by our liberal rules of notice pleading." *Harrold v. Dowd*, 149 N.C. App. 777, 782, 561 S.E.2d 914, 918 (2002) (citations and internal quotation marks omitted). Rule 9(b) of the North Carolina Rules of Civil Procedure require that "[i]n all averments of fraud, . . . the circumstances constituting fraud . . . shall be stated with particularity." N.C. Gen. Stat. § 1A-1, Rule 9(b) (2019).

¶ 50    Our Supreme Court has held Rule 9(b)'s particularity requirement for a fraud claim "is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *Terry*, 302 N.C. at 85, 273 S.E.2d at 678.

¶ 51    "[A] fiduciary relationship is generally described as arising when there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Dallaire v. Bank of Am. N.A.*, 367 N.C. 363, 367, 760 S.E.2d 263, 266 (2014) (citation and internal quotation marks omitted).

¶ 52    Allegations of fraud are rarely resolved at the pleading or summary judgment stage, because resolution of the cause requires the determination of a litigant's state of mind. *Whitman v. Forbes*, 55 N.C. App. 706, 713, 286 S.E.2d 889, 893 (1982) (citations omitted).

¶ 53    "In the event that a party fails to allege any special circumstances that could establish a fiduciary relationship, dismissal of a claim which hinges upon the existence of such a relationship would be appropriate." *Azure Dolphin, LLC. v. Barton*, 371 N.C. 579, 599, 821 S.E.2d 711, 725 (2018) (citations and internal quotation marks omitted).

¶ 54    Defendants have not alleged Plaintiff held himself out to be a real estate broker or in any confidential relationship with Defendants. Defendants allege Plaintiff was

an advisor, consultant, and deal maker due to his superior knowledge and experience regarding real property values and transactions. Defendants further allege the existence of a *de jure* fiduciary relationship. Defendants did not assert this argument before the trial court and have waived it for appellate review. *See* N.C. R. App. P. 10.

In *Azure Dolphin*, the plaintiff argued a party acting as a real estate investment expert and advisor created a fiduciary relationship. *Azure Dolphin*, 371 N.C. at 601, 821 S.E.2d at 726. Our Supreme Court disagreed and held the allegations did not create a fiduciary relationship between the parties. *Id.* at 601-02, 821 S.E.2d at 726-27. Here, Defendants have not shown how their purported reliance on Plaintiff created a "confidence reposed on one side, and the resulting superiority and influence on the other, necessary to show the existence of a fiduciary relationship as a matter of fact." *Id.* at 601-02, 821 S.E.2d at 726-27. Defendant initiated the negotiations by soliciting Plaintiff's involvement and averred Plaintiff was "negotiating for" Huckabee. The trial court did not err in granting summary judgment for Plaintiff on Defendants' claims for constructive fraud and for breach of a fiduciary duty. Defendants' arguments are overruled.

## V. Defendants' Appeal: Motion to Amend

Defendants further argue the trial court abused its discretion and erred by denying their motion to amend their counterclaims. Defendants sought to amend their counterclaims and file new claims for actual fraud, slander to title, malicious

prosecution, and tortious interference with contract. These allegations are based upon a premise of actual fraud.

## A. Standard of Review

"Reasons justifying denial of an amendment are (a) undue delay, (b) bad faith, (c) undue prejudice, (d) futility of amendment, and (e) repeated failure to cure defects by previous amendments." *Martin v. Hare*, 78 N.C. App. 358, 361, 337 S.E.2d 632, 634 (1985). Once the pleadings are joined "[a] motion to amend is addressed to the discretion of the court, and its decision thereon is not subject to review except in case of manifest abuse." *Calloway v. Ford Motor Co.*, 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972); *see* N.C. Gen. Stat. § 1A-1, Rule 15 (2019).

## B. Analysis

The trial court denied Defendants' motion to amend their pleadings because such amendment would be futile. "To successfully assert an allegation of actual fraud, the plaintiff must plead five elements: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Head v. Gould Killian CPA Grp., P.A.*, 371 N.C. 2, 9, 812 S.E.2d 831, 837 (2018) (citations and internal quotation marks omitted).

"[A]ny reliance on the allegedly false representations must be reasonable." *Id.* (citations omitted). Rule 9 of our Rules of Civil Procedure place an increased burden

on the pleader requiring "the circumstances constituting fraud . . . shall be stated with particularity." N.C. Gen. Stat. § 1A-1, Rule 9(b). Defendants failed to assert a sufficient allegation and showing in their pleadings, depositions, and affidavits of any reasonable reliance upon false representations by Plaintiff to constitute actual fraud to overcome Plaintiff's motion for summary judgment. Defendants failed to show any abuse of discretion in the trial court's denial of Defendants' motion to amend their pleadings, where such amendment would be futile. Defendants' arguments are overruled.

## VI. Conclusion

¶ 60 Viewed in the light most favorable to Plaintiff and Defendants on their respective motions for summary judgment and giving both parties the benefit of any disputed inferences of their respective claims, the trial court properly entered summary judgment on all claims. The trial court did not err, much less abuse its discretion, in denying Defendants' motions to amend their counterclaims. The trial court's order is affirmed. *It is so ordered.*

AFFIRMED.

Judges COLLINS and CARPENTER concur.