MULTIFAMILY MORTGAGE TRUST 1996-1, Plaintiff v. CENTURY OAKS LIMITED, a North Carolina Limited Partnership, Defendant v. RAYMOND W. POSTLETHWAIT, JR., Substitute Trustee, Additional Plaintiff

No. COA99-715

(Filed 18 July 2000)

**1. Mortgages— foreclosure—HUD's refusal to recast debt— not a violation of due process**

The trial court did not err in an action arising from a foreclosure of a mortgage on a multi-family housing project purchased by plaintiff from HUD by concluding that plaintiff was entitled to summary judgment on the issue of whether HUD violated the Due Process Clause by refusing to provide defendant with flexible financing options and in selling the mortgage at a reduced price. Defendant was first in default in 1989 and continued in default until 1994, thereafter failing to make payments pursuant to a workout agreement. HUD's actions in refusing to recast the debt did not rise to the level of being arbitrary, capricious, or an abuse of discretion, and violated no applicable law. Additionally, HUD properly exercised its discretion in selling the loan to plaintiff as part of a package of 158 loans.

**2. Mortgages— foreclosure—HUD multi-family project—no fiduciary duty by HUD**

The trial court did not err by granting summary judgment for plaintiff in a foreclosure of a mortgage on a multi-family housing project where plaintiff had purchased the mortgage from HUD and defendant argued that HUD had breached its fiduciary duty. The allegations relied upon by defendant do not amount to con-

MULTIFAMILY MORTGAGE TR. v. CENTURY OAKS LTD.

[139 N.C. App. 140 (2000)]

trol, domination and spoilation of defendant's affairs; there was no evidence that would justify the imposition of a fiduciary duty on HUD.

**3. Mortgages— foreclosure—workout agreement—default**

The trial court did not err by granting summary judgment for plaintiff in an action arising from a foreclosure of a mortgage on a multi-family housing project where defendant contended that it was not in default since it had substantially complied with a workout agreement and that defaults prior to the workout agreement were waived, but provisional workout agreements do not modify or supercede the original mortgages or alter HUD's right to foreclosure, defendant did not appeal a finding subsequent to the agreement that the loan was in default, defendant acknowledged that the annual lump sum payment could not be made, defendant's managing general partner stated that neither the lump sum payment nor the letter of credit requirements of the workout agreement were complied with by defendant, and defendant did not offer evidence to support its position that it had substantially complied with the agreement.

**4. Mortgages— foreclosure—earlier consent judgment— requirement that mortgage be current**

The trial court did not err by granting summary judgment for plaintiff in an action arising from the foreclosure of a mortgage purchased by plaintiff from HUD where defendant contended that plaintiff had relinquished in an earlier consent judgment the requirement that defendant hold the mortgage current, but defendant did not reference any provision in the consent judgment to support its position and the court did not find language in the judgment to support defendant's position. Defendant's contention that it was entitled to an accounting was not reached on appeal because an accounting was not requested at trial.

Appeal by defendant from judgment entered 4 November 1998 and filed 9 November 1998 by Judge E. Lynn Johnson in Durham County Superior Court. Heard in the Court of Appeals 29 March 2000.

*Horack, Talley, Pharr & Lowndes, P.A., by James H. Pulliam, for plaintiff-appellee.*

*Michaux & Michaux, P.A., by H. M. Michaux, Jr., Eric C. Michaux, and Crystal S. Creech, for defendant-appellant.*

WALKER, Judge.

On 10 July 1980, defendant Century Oaks Limited borrowed $5,935,200 from Trust Company Mortgage, evidenced by a non-recourse note and secured by a deed of trust. Defendant also executed a regulatory agreement with the Department of Housing and Urban Development (HUD) for a Multi-Family Housing Project. The loan was part of the Federal Housing Administration's (FHA) Multi-family Mortgage Insurance Program's credit enhancement devices designed to facilitate financing of new or rehabilitated multi-family rentals. Under the program, FHA, as a division of HUD, approves lenders to provide the funds to make mortgage loans, and FHA provides insurance to the lenders for loan defaults. If a mortgagor defaults and fails to cure the default within 30 days, the mortgagee may assign the note to FHA/HUD in consideration for the insurance benefits. Upon such an assignment, FHA/HUD becomes the mortgagor and servicer of the note.

In December 1989, as a result of defendant's default on the note, defendant's mortgagor assigned the note to HUD. In March 1994, defendant and HUD entered into a Provisional Workout Agreement (PWA), whereby defendant "expressly acknowledge[d] that the mortgage (Deed of Trust) and Note secured by the above project is in default." Additionally, defendant agreed to make "annual lump sum payments, to be applied to mortgage delinquencies, of $32,974," along with the submission of letters of credit securing the lump sum payments. The PWA also provided that "failure of [defendant] to meet the terms of this Arrangement will be sufficient cause for the Secretary [of HUD] to terminate this Arrangement at any time with a thirty day written notice and to commence foreclosure action."

On 11 January 1995, HUD requested evidence from defendant that the first lump sum payment had been made. As of 3 May 1995, the first lump sum payment had not been made, and HUD notified defendant that HUD would terminate the PWA on 5 June 1995. Defendant then attempted to re-negotiate with HUD and requested HUD to discount the mortgage or recast the debt over a new payout period. In support of its requests, defendant sent a letter to HUD which stated that the PWA payment requirement "is onerous and can not be paid by the partnership." HUD declined to re-negotiate the mortgage terms and HUD notified defendant of its decision on 2 June 1995. Subsequently, HUD terminated the PWA on 5 June 1995 for failure to comply with its terms and conditions.

MULTIFAMILY MORTGAGE TR. v. CENTURY OAKS LTD.

[139 N.C. App. 140 (2000)]

In 1994, HUD developed a program to sell many of these loans to private investors. Under this arrangement, the loans would be sold to bidders at auctions pursuant to conditions designed to be fair to bidders while optimizing the return of money owed to HUD. On 26 April 1996, HUD published in the Federal Register its official notice of the sale of 158 different mortgage properties on which it held loans, including the defendant's property. On 27 June 1996, HUD sold the 158 loans to plaintiff. Plaintiff assigned defendant's mortgage a value of $5,315,693.

On 23 July 1996, plaintiff filed this action, seeking the appointment of a receiver to manage the property pending foreclosure, which was granted the same day by Superior Court Judge Orlando Hudson. Plaintiff filed the affidavit of James Weston Moffett, a vice-president of the servicer for the note, in which he averred that neither plaintiff nor HUD had received any monthly installment since April 1996 and that the loan was still in default. On 24 July 1996, defendant filed a motion for appropriate relief, seeking to set aside the 23 July 1996 order, which Judge Hudson granted in part by canceling the appointment of a receiver. On 27 August 1996, the parties entered a consent order appointing defendant's affiliated management company, Union Insurance and Realty Company, Inc. (Union), to manage the property.

On 19 December 1996, the clerk of superior court entered an order authorizing foreclosure on the deed of trust securing the loan. On 12 February 1997, the day before the scheduled foreclosure sale, defendant filed a counterclaim seeking a restraining order and for appropriate relief pursuant to Rule 60 of the North Carolina Rules of Civil Procedure. Judge Hudson granted the temporary restraining order enjoining the foreclosure sale and subsequently issued a preliminary injunction. On 14 April 1997, plaintiff filed an amended reply to defendant's counterclaim.

On 25 August 1997, the trial court, Superior Court Judge Gordon Battle presiding, ordered the appointment of a receiver, finding that "[a]s a result of the [defendant's] failure to pay certain sums when due, the Note and Deed of Trust are in default." Defendant did not appeal this order.

On 5 March 1998, plaintiff filed a motion for summary judgment, which was granted by Superior Court Judge E. Lynn Johnson on 4 November 1998. The trial court's order also dissolved the preliminary injunction and ordered the foreclosure sale to proceed, which defendant appeals.

On 4 March 1999, Judge Hudson granted a stay as to the sale of the property "until a final mandate is issued by the last appellate court having jurisdiction over this matter." Plaintiff presented evidence in support of what it contended should be a significant bond pending the appeal. The trial court set a bond of $5,000.

Defendant argues that the trial court erred in granting plaintiff's motion for summary judgment. Specifically, defendant's defenses to foreclosure against HUD raise material issues of fact which preclude summary judgment for the plaintiff.

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1 Rule 56(c) (1999). The party moving for summary judgment bears the burden of establishing the lack of any triable issue and may meet this burden by (1) proving that an essential element of the opposing party's claim is nonexistent; (2) showing through discovery that the opposing party cannot produce evidence to support an essential element; or (3) showing that the opposing party cannot surmount an affirmative defense. *See Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992).

[1] Initially, defendant contends HUD "violated guarantees of fairness and equal treatment embodied in the Due Process Clause of the Fifth Amendment" by refusing to provide defendant with flexible financing options and by selling the mortgage to plaintiff at a "substantially reduced price." Defendant concedes that HUD has broad discretion in making foreclosure decisions, but argues that HUD's actions were arbitrary, capricious and not in compliance with applicable law. Specifically, defendant alleges that HUD's refusal to consider defendant's proposal to discount the mortgage or to allow refinancing of the loan and it's subsequent sale of the mortgage to plaintiff at a "substantially reduced price" constituted arbitrary and unequal treatment.

Judicial review of HUD's decisions "should be narrowly limited to the question whether HUD's actions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *United States v. Winthrop Towers*, 628 F.2d 1028, 1036 (7th Cir. 1980); 5 U.S.C. § 706(2)(A) (1999). Additionally, the *Winthrop Towers* court stated that:

the decision to foreclose a mortgage is fundamentally of a business and administrative nature, requiring the exercise of HUD's business and administrative judgment. HUD may certainly give major consideration to preservation of the assets of the insurance fund and may weigh other factors relevant to national housing policy and formulating administrative procedures and in deciding whether to foreclose a particular mortgage.

*Id.* Further, the court observed that based upon HUD's "very broad discretion" in the area of HUD foreclosures, "the mortgagor resisting foreclosure should bear the initial burden of introducing some evidence of HUD's arbitrary or capricious action, abuse of discretion or failure to comply with applicable law." *Id.*

Defendant was first in default on the loan in 1989, which according to plaintiff, continued in default until 1994, when defendant acknowledged in the PWA that the loan was in default. Thereafter, defendant failed to make payments pursuant to the PWA, which was terminated by HUD. Based on our review of the record, defendant's allegation that HUD refused to recast the debt or discount the mortgage does not rise to a level of arbitrary, capricious, or an abuse of discretion, and violates no applicable law. The trial court did not err in concluding that no material issue of fact exists as to this argument and that plaintiff was entitled to judgment as a matter of law.

Additionally, defendant challenges HUD's authority to sell the mortgage at a reduced price. In 1994, Congress authorized HUD to sell mortgage loans in response to the losses the government was suffering in managing defaulting HUD mortgages. *See* 12 U.S.C. § 1701z-11(a) (1999); *Bayvue Apartments Joint Venture v. Ocwen Federal Bank FSB*, 971 F. Supp. 129, 132 (D.D.C. 1997). Under 12 U.S.C. § 1701z-11(k)(4) (1999):

Notwithstanding any other provision of law, the Secretary [of HUD] may sell mortgages held on projects that are not subsidized or formerly subsidized projects on such terms and conditions as the Secretary may prescribe.

Thus, HUD properly exercised its discretion in selling this loan as part of the package of the 158 loans sold to plaintiff.

[2] Next, defendant argues that HUD breached its fiduciary duty to defendant and that equity requires plaintiff being enjoined "from foreclosure where HUD's undue control caused [defendant's] current dilemma." Defendant contends that pursuant to the regulatory agree-

ment entered between defendant and HUD, periodic inspection of its records, distribution of earnings and profits to the partners, transfer of property and assets, and limits of secondary financing were all controlled by HUD, such that HUD owed a fiduciary duty to defendant. Defendant concedes that no cause of action has been asserted against HUD, which is not a party to this action, but contends "HUD's role must be taken into account in this equitable foreclosure proceeding."

A fiduciary duty, in the context of a financing party to a corporation, arises only when the evidence establishes that the party providing financing to a corporation completely dominates and controls its affairs. *Edwards v. Bank*, 39 N.C. App. 261, 277, 250 S.E.2d 651, 662 (1979); *Pappas v. NCNB Nat. Bank of North Carolina*, 653 F. Supp. 699, 704 (M.D.N.C. 1987). Further, to justify the imposition of a fiduciary obligation on a party financing the affairs of a corporation, it must be shown that the financing party essentially dominated the will of its debtor. *In re Prima Co.*, 98 F.2d 952 (7th Cir. 1938), *cert. denied*, 305 U.S. 658, 83 L. Ed. 426 (1939).

We fail to see any evidence that would justify the imposition of such a fiduciary obligation on the part of HUD. The allegations defendant relies upon in support of this contention do not amount to control, domination and spoilation of its affairs. *See Edwards*, 39 N.C. App. at 277, 250 S.E.2d at 662. Thus, there is no issue of material fact of a fiduciary duty owed by HUD to defendant.

[3] Defendant further contends that when the PWA was executed, all prior defaults were waived and the note is not in default since defendant has "substantially complied" with the PWA.

It is "well established that provisional work-out agreements do not modify or supersede the original mortgages and mortgage notes or alter HUD's rights to foreclosure on default." *United States v. Wennick*, 645 F. Supp. 103, 105 (D. Del. 1986); *see also United States v. Victory Highway Village, Inc.*, 662 F.2d 488, 495 (8th Cir. 1981); *United States v. 1300 Lafayette East*, 455 F. Supp. 988, 991 (E.D. Mich. 1978).

In the 25 August 1997 order appointing the temporary receiver, entered three years after the PWA was executed, the trial court found that the loan was in default, which the defendant did not appeal. The affidavit of Blanch Reeder, an official of HUD and manager of defendant's note, states in part:

4. [Defendant] defaulted under the terms of the PWA for its failure to make a lump sum payment due thereunder, its failure to provide a Letter of Credit as required, and commencing in April 1995, its failure to make the monthly payments in the amount required under the PWA. [. . .]

5. At the time HUD sold and assigned the loan, as represented by the Note and Deed of Trust, the PWA had been terminated and the Note was in default.

Additionally, defendant acknowledged that the annual lump sum payment "can not be paid by the partnership." Further, the managing general partner of defendant stated in his deposition that neither the lump sum payment nor letter of credit requirements of the PWA were complied with by defendant.

The record does not reflect that defendant offered evidence to support its position that it "has substantially complied with the workout agreement" or in support of its contention the PWA waived all prior defaults.

[4] Defendant also contends that plaintiff "relinquished the requirement that [defendant] hold[] its mortgage current" in the 27 August 1996 consent order. The consent order, which appointed Union to manage the property under certain guidelines, provides in part:

5. Except as otherwise expressly provided, this order is entered without prejudice to any rights, claims or positions of any party and nothing in this order shall constitute or be construed as a decision on any legal issue or an admission or waiver by either party as to any issue of fact or law or any other right or remedy with respect to any matter.

Defendant does not reference any provision in the consent order to support its position that plaintiff waived the requirement that defendant keep its payment current under the note. We do not find any language in the consent order that would support defendant's contention and this argument is without merit.

Finally, defendant contends it is entitled to a "thorough and complete accounting from [plaintiff] and HUD to determine how payments made to HUD were applied."

Our review of the record reveals that defendant did not request an accounting at the trial court; therefore, we do not reach the issue. *See* N.C.R. App. P., Rule 10(b)(1) (2000).

In conclusion, after a careful review of the record, we conclude the trial court properly determined that there were no issues of material fact and that plaintiff was therefore entitled to summary judgment. Accordingly, the 4 March 1999 order enjoining the foreclosure and sale of the property is vacated.

The order and judgment of 4 November 1998 is affirmed.

The order of 4 March 1999 is vacated.

Judges LEWIS and SMITH concur.