DAVIS, Judge.
Plaintiff Shallotte Partners, LLC ("Shallotte") appeals and Berkadia Commercial Mortgage, LLC ("Berkadia") cross-appeals from the trial court's 3 September 2014 order partially granting Berkadia's motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. On appeal, Shallotte contends that the trial court erred in dismissing its claims for breach of fiduciary duty and constructive fraud against Berkadia. In its cross-appeal, Berkadia argues that the trial court improperly denied its motion to dismiss Shallotte's breach of contract claim. After careful review, we reverse the trial court's order in part and dismiss Berkadia's cross-appeal.
Factual Background
We have summarized the pertinent facts below using Shallotte's own statements from its complaint, which we treat as true in reviewing the trial court's order granting a motion to dismiss under Rule 12(b)(6). See, e.g., Stein v. Asheville City Bd. of Educ.,360 N.C. 321, 325, 626 S.E.2d 263, 266 (2006) ( "When reviewing a complaint dismissed under Rule 12(b)(6), we treat a plaintiff's factual allegations as true.").
On 30 August 2008, Shallotte, a real estate development company, entered into a contract with Berkadia, a commercial real estate lender approved by the United States Department of Housing and Urban Development ("HUD"), in which Berkadia "agreed to conduct an initial underwriting and analysis of an apartment project to be owned by Shallotte in Brunswick County, Calabash, North Carolina" (the "Project").[1] The agreement further provided that Berkadia would assist Shallotte in procuring a construction loan and permanent financing loans, which would be insured by HUD, and as to which Berkadia would serve as the lender.
After entering into this agreement, representatives of Berkadia and Shallotte met with representatives of Samet Corporation ("Samet"), a general contracting firm. After consulting with Berkadia and the Project's architect, Shallotte subsequently hired Samet to serve as the general contractor for the Project.
Pursuant to its agreement with Shallotte, Berkadia proceeded to "procure [ ] all the studies and opinions of independent agents which are required by the HUD regulations for Shallotte and the Project to qualify for an insured multi-family loan under Section 221d4 of the National Housing Act." Shallotte provided Berkadia with financial information about itself, so that Berkadia would know the extent of Shallotte's ability to pay the costs associated with the closing of the loan and to ultimately make the loan payments.
On 21 October 2009, Shallotte advised Berkadia that Brunswick County had assessed a $873,000.00 impact fee ("the Impact Fee") for water and sewer costs associated with the Project. Berkadia, as a HUD-approved lender, knew that the Impact Fee was required to be disclosed to HUD in connection with Shallotte's loan application. However, Berkadia's representatives deliberately concealed from HUD the existence of the Impact Fee.
Based on Berkadia's representations to HUD on behalf of Shallotte, HUD ultimately approved the loan application, and on 1 July 2010, Shallotte and Berkadia closed on the loan, which was in the amount of $14,555,700.00. The loan was secured by a deed of trust encumbering the real property owned by Shallotte upon which the Project was to be built.
In or around July 2012, after an initial default on the HUD loan, Shallotte attempted to secure an increase in the amount of the loan as well as to obtain additional investors who were willing to provide additional financial assistance. At some point thereafter, as a result of an internal investigation conducted by Berkadia, "the executive officers of Berkadia learned that its agents and employees had known of the existence of the impact fees and of the amount in October 2009, and learned that neither the amount of those fees nor the existence of such fees, had been reported on any of the many forms submitted by Berkadia to HUD, which Berkadia knew to be violative of the requirements of HUD." Despite becoming aware of this information during the internal investigation, Berkadia executives did not inform HUD. Nor did they inform Shallotte that Berkadia had previously concealed this information from HUD.
HUD subsequently conducted its own investigation and discovered both that the Impact Fee had been omitted from Shallotte's loan application and that Shallotte had been aware of the Impact Fee's existence prior to the submission of the application. Based on this information, HUD declined to increase the amount of the HUD loan as requested by Shallotte due to its belief that Shallotte had materially misrepresented the costs associated with the existing loan by concealing the existence of the Impact Fee.
Shallotte ultimately defaulted on its payments due under the loan. Berkadia initially assigned the loan to HUD in order to seek insurance benefits from HUD as a result of the default. However, "[r]ealizing the dramatic effect upon the business of Berkadia if HUD learned of [Berkadia's omission and subsequent concealment of the Impact Fee] ... Berkadia requested that the [a]ssignment be reversed[.]" HUD agreed to this request at which point Berkadia repurchased the loan from HUD and thereafter accelerated the unpaid outstanding balance owed on the loan. However, after adding interest, late fees, and penalties, Berkadia demanded a total payment of $16,635,548.48 from Shallotte. Berkadia subsequently initiated foreclosure proceedings based on Shallotte's default.
On 28 February 2014, Shallotte filed the present action against Berkadia and Samet in Mecklenburg County Superior Court, asserting various causes of action against each defendant.[2] On 6 May 2014, Berkadia filed a motion to dismiss Shallotte's claims against it pursuant to Rule 12(b)(6). A hearing on Berkadia's motion was held on 1 August 2014. On 3 September 2014, the Honorable Richard D. Boner entered an order dismissing Shallotte's claims against Berkadia for breach of fiduciary duty, constructive fraud, and unfair trade practices. Judge Boner's order further stated that "[t]o the extent that [Shallotte] asserts a claim for Breach of Contract or Negligence ... Berkadia ... is not entitled to judgment as a matter of law and those claims survive." Shallotte filed a timely notice of appeal of Judge Boner's order, and Berkadia cross-appealed.
Analysis
I. Appellate Jurisdiction
As an initial matter, we note that the present appeal is interlocutory as it does not dispose of all claims asserted by Shallotte against Berkadia and Samet. Berkadia has filed a motion to dismiss Shallotte's appeal based on lack of appellate jurisdiction. However, in the alternative, Berkadia has cross-appealed the trial court's denial of its motion to dismiss Shallotte's breach of contract claim. Therefore, we must determine whether we have jurisdiction over both Shallotte's appeal and Berkadia's cross-appeal.
"A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court." Duval v. OM Hospitality, LLC,186 N.C.App. 390, 392, 651 S.E.2d 261, 263 (2007) (citation omitted). Conversely, an order or judgment is interlocutory if it does not settle all of the issues in the case but rather "directs some further proceeding preliminary to the final decree." Heavner v. Heavner,73 N.C.App. 331, 332, 326 S.E.2d 78, 80, disc. review denied,313 N.C. 601, 330 S.E.2d 610 (1985).
Generally, there is no right of immediate appeal from an interlocutory order. The prohibition against appeals from interlocutory orders prevents fragmentary, premature and unnecessary appeals by permitting the trial court to bring the case to final judgment before it is presented to the appellate courts.
However, there are two avenues by which a party may immediately appeal an interlocutory order or judgment. First, if the order or judgment is final as to some but not all of the claims or parties, and the trial court certifies the case for appeal pursuant to N.C. Gen.Stat. § 1A-1, Rule 54(b), an immediate appeal will lie. Second, an appeal is permitted under N.C. Gen.Stat. §§ 1-277(a) and 7A-27(d)(1) if the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review.
Feltman v. City of Wilson,--- N.C.App. ----, ----, 767 S.E.2d 615, 618-19 (2014) (internal citations and quotation marks omitted). It is the appealing party's burden to establish that a substantial right would be jeopardized unless an immediate appeal is allowed. Embler v. Embler,143 N.C.App. 162, 166, 545 S.E.2d 259, 262 (2001).
A. Shallotte's Appeal
In the present case, the trial court did not certify its order for immediate appellate review under Rule 54(b). However, Shallotte argues that in the event its appeal is dismissed, it "will be forced to try the breach of contract issues before it can appeal the dismissal of its fiduciary duty claims.... If Shallotte is successful at trial on its breach of contract claims, and this Court ultimately decides that the fiduciary duty claims were improperly dismissed, Shallotte will then have to retry and reprove every fact that was addressed in the breach of contract trial, creating an imminent threat of inconsistent verdicts on the same factual issues."
In Carcano v. JBSS, LLC,200 N.C.App. 162, 684 S.E.2d 41 (2009), we stated that "[i]f a party is faced with the possibility of undergoing a second trial, a substantial right is affected when the same issues are present in both trials which creates the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue." Id.at 167, 684 S.E.2d at 47 (citation, quotation marks, and brackets omitted). In Carcano,the plaintiffs sought to appeal an interlocutory order dismissing their claims for breach of fiduciary duty, unjust enrichment, unfair trade practices, and constructive trust but declining to dismiss their breach of contract claim. Id.at 168, 684 S.E.2d at 47. Based on these facts, we held that
[c]ommon to all claims is the factual issue of whether defendants caused plaintiffs' damages by falsely representing that "JBSS, LLC," validly existed as an LLC and by inducing plaintiffs to invest in the business. Because there are overlapping factual issues, inconsistent verdicts could result. We hold, thus, that the trial court's grant of partial summary judgment to defendants affects a substantial right, and plaintiffs' appeal is properly before us.
Id.
Here, as in Carcano,there is clearly an overlap between the factual issues underlying Shallotte's claims for breach of fiduciary duty and constructive fraud and those surrounding its claim for breach of contract given that the existence of any fiduciary duty owed by Berkadia to Shallotte is based on the terms of the agreement between them that is the subject of Shallotte's breach of contract claim. Thus, because Shallotte's breach of fiduciary duty and constructive fraud claims are intertwined with the obligations existing on the part of Berkadia pursuant to the contract between it and Shallotte, the possibility of inconsistent verdicts exists absent immediate appeal of the trial court's dismissal of these claims. Therefore, Shallotte has sufficiently shown the existence of a substantial right so as to allow this Court to exercise jurisdiction over its appeal. Berkadia's motion to dismiss Shallotte's appeal is therefore denied.[3]
B. Berkadia's Cross-Appeal
In its cross-appeal, Berkadia seeks the reversal of the trial court's denial of its motion to dismiss Shallotte's breach of contract claim. As noted above, it is the appealing party's burden to establish that a substantial right would be jeopardized unless an immediate appeal is allowed. Embler,143 N.C.App. at 166, 545 S .E.2d at 262. Here, Berkadia has failed to make any argument at all explaining how this aspect of the trial court's ruling affects a substantial right that would be lost absent immediate appeal. Instead, Berkadia simply argues that "[t]o the extent [Shallotte] articulates a substantial right worthy of appeal, the instant [cross-]appeal would be proper." This bare allegation-without more-is insufficient to show a substantial right.
Moreover, "[i]t is well-established that an [o]rder denyinga Rule 12(b)(6) motion is interlocutory and clearly not appealable." Callanan v. Walsh,--- N.C.App. ----, ----, 743 S .E.2d 686, 688 (2013) (citation, quotation marks, and brackets omitted and emphasis added); see also Whitehurst Inv. Props., LLC v. NewBridge Bank,--- N.C.App. ----, ----, 764 S.E.2d 487, 489 (2014) ("Denial of a motion to dismiss is interlocutory because it simply allows an action to proceed and will not seriously impair any right of defendants that cannot be corrected upon appeal from final judgment." (citation and quotation marks omitted)).
Accordingly, because Berkadia has failed to satisfy its burden of showing that appellate jurisdiction exists, its cross-appeal is dismissed. See Embler,143 N.C.App. at 166-67, 545 S.E.2d at 262-63 ("Defendant has not argued that his appeal implicates a substantial right, and we do not discern one.... There does not appear to be any danger of inconsistent verdicts in this situation, nor of the loss of a personal right, such as the right to trial by jury.... Therefore, we grant plaintiff's Motion to Dismiss Interlocutory Appeal.").
II. Breach of Fiduciary Duty Claim
Shallotte argues that its complaint contained allegations sufficient to state a breach of fiduciary duty claim such that the trial court's dismissal of the claim was erroneous. We agree.
The standard of review of an order granting a Rule 12(b)(6) motion is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true. On appeal, we review the pleadings de novoto determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct.
Gilmore v. Gilmore,--- N.C.App. ----, ----, 748 S.E.2d 42, 45 (2013) (internal citations, quotation marks, and brackets omitted).
In order to establish a breach of fiduciary duty claim, plaintiffs are "required to produce evidence that (1) defendants owed them a fiduciary duty of care; (2) defendants ... violat[ed] ... their fiduciary duty; and (3) this breach of duty was a proximate cause of injury to plaintiffs." Farndale Co., LLC v. Gibellini,176 N.C.App. 60, 68, 628 S.E.2d 15, 20 (2006) ; see also Smith v. Jackson Cty. Bd. of Educ.,168 N.C.App. 452, 465, 608 S.E.2d 399, 409-10 (2005) ("Breach of fiduciary duty occurs when there is unfair dealing with one to whom the defendant has an active responsibility; it requires a special relationship unlike actual fraud." (citation and quotation marks omitted)).
Our Supreme Court has held that
[f]or a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties. Such a relationship has been broadly defined by this Court as one in which there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence, and it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other.
Dalton v. Camp,353 N.C. 647, 651, 548 S.E.2d 704, 707-08 (2001) (internal citations, quotation marks, brackets, ellipses, and emphasis omitted). "Whether a fiduciary relationship exists is determined by the specific facts and circumstances of the case. Generally, the existence or nonexistence of a fiduciary duty is a question of factfor the jury." Tin Originals, Inc. v. Colonial Tin Works, Inc.,98 N.C.App. 663, 665, 391 S.E.2d 831, 832 (1990) (citation, quotation marks, and brackets omitted).
Berkadia argues that Shallotte "has merely described a lender-borrower relationship that has been held under North Carolina law as insufficient to support a fiduciary duty, or a fiduciary duty claim." It is true, as a general proposition, that in North Carolina
[o]rdinary borrower-lender transactions ... are considered arm's length and do not typically give rise to fiduciary duties. In other words, the law does not typically impose
upon lenders a duty to put borrowers' interests ahead of their own. Rather, borrowers and lenders are generally bound only by the terms of their contract and the Uniform Commercial Code.
Dallaire v. Bank of Am., N.A.,367 N.C. 363, 368, 760 S.E.2d 263, 266-67 (2014) (internal citations omitted).
However, in Dallaire,our Supreme Court expressly stated that the existence of a borrower-lender relationship does not per seforeclose the possibility of the creation of a fiduciary duty that is owed to the borrower by the lender. See id.at 368, 760 S.E.2d at 267 ("Nonetheless, because a fiduciary relationship may exist under a variety of circumstances, it is possible, at least theoretically, for a particular bank-customer transaction to give rise to a fiduciary relation given the proper circumstances." (internal citations and quotation marks omitted)).
In applying Dallaire,we have held that to establish a fiduciary duty in the borrower-lender context requires a "show[ing of] some additional fact which tends to elevate the relationship above that of a typical debtor and creditor." Lynn v. Fed. Nat. Mortg. Ass'n,--- N.C.App. ----, ----, 760 S.E.2d 372, 376 (2014). Therefore, our inquiry in the present case turns on whether Shallotte has pled the existence of some additional fact or circumstance concerning its relationship with Berkadia beyond those inherent in a normal borrower-lender relationship sufficient to show the existence of a fiduciary duty owed to it by Berkadia.
In addressing this issue, it is appropriate to acknowledge the unique nature of a HUD loan. "The overall purpose of the [HUD] mortgage insurance program is to encourage leading lenders, in exchange for a government guarantee of the loan, to extend mortgages to those carrying higher credit risks." Pfeifer v. Countrywide Home Loans, Inc.,211 Cal.App.4th 1250, 1269, 150 Cal.Rptr.3d 673, 688 (Cal.App. 1 Dist.2012). A HUD insured loan is in essence a transaction between three parties: (1) the authorized lending institution (who must be approved by HUD and agree to abide by its rules and regulations); (2) the federal government (who insures the loan); and (3) the borrower (who obtains the loan by submitting an application to HUD through the HUD approved lender). See Multifamily Mortgage Trust 1996-1 v. Century Oaks Ltd.,139 N.C.App. 140, 142, 532 S.E.2d 578, 579 (2000) ("FHA, as a division of HUD, approves lenders to provide the funds to make mortgage loans, and FHA provides insurance to the lenders for loan defaults. If a mortgagor defaults and fails to cure the default within 30 days, the mortgagee may assign the note to FHA/HUD in consideration for the insurance benefits. Upon such an assignment, FHA/HUD becomes the mortgagor and servicer of the note."); see also12 U.S.C. § 1709(b)(1) (2015) ("To be eligible for insurance under this section a mortgage shall comply with the following: ... Have been made to, and be held by, a mortgagee approved by the Secretary as responsible and able to service the mortgage properly.").
In the present case, based on the allegations in Shallotte's complaint, Berkadia played two distinct roles: First, it acted on Shallotte's behalf before HUD during the events preceding the actual closing of the loan. Second, once the loan went into effect, Berkadia served as a lender for the loan. It is this first role that forms the basis for Shallotte's breach of fiduciary duty claim and distinguishes this case from the longstanding rule-discussed above-in North Carolina that no fiduciary relationship is created simply by the existence of a borrower-lender relationship.
When taken in the light most favorable to Shallotte, Shallotte's complaint alleged that (1) Berkadia was retained to assist Shallotte in procuring the HUD loan; (2) in this role, Berkadia dealt directly with HUD on Shallotte's behalf; (3) Berkadia improperly concealed the existence of the Impact Fee from HUD so that the loan would be approved by HUD, thereby cloaking the loan with a federally-insured status that would protect Berkadia from any losses associated with a potential default by Shallotte; (4) Berkadia took such action despite its knowledge that Shallotte lacked the financial assets to pay off the loan when the amount of the Impact Fee was added to the loan amount; (5) Berkadia intentionally allowed HUD to falsely believe that Shallotte-rather than Berkadia-was responsible for deliberately omitting the Impact Fee in its loan application and Berkadia did so in order to avoid endangering its status as a HUD-approved lender; and (6) Berkadia reaped financial benefits from this course of conduct at the expense of Shallotte.
With regard to the existence of a fiduciary relationship between Shallotte and Berkadia and Berkadia's breach of its accompanying fiduciary duty, Shallotte alleged, inter alia,the following facts in its complaint:
103.... Because of the information given to it by Shallotte, Berkadia had the duty to include the impact fees in the HUD documents which it submitted in support of the insured loan. Berkadia breached its duty to Shallotte by failing to provide this information to HUD....
104. Shallotte invested its trust and confidence in Berkadia. The means and methods by which Berkadia inspired the trust and confidence of Shallotte were created by a multitude of its actions, its process and its procedures. Shallotte believed that because Berkadia had all of the information which Shallotte had presented to Berkadia that there was no cause or reason to question or to second guess the information that Berkadia placed on the documents that it submitted to HUD.... Shallotte believed all of the statements and representations of Berkadia and its experts to be true and accurate. On account of these matters and things herein alleged a fiduciary relationship existed between Berkadia and Shallotte, which was breached by Berkadia as is herein alleged.
....
109. Shallotte paid to Berkadia substantial sums of money as fees for its services. In addition, it paid other sums related to the Project. Based upon its trust and confidence in Berkadia, Shallotte invested more than $2.7 million in the Project. Berkadia took advantage of its position of trust and confidence with Shallotte and by virtue of its breach of its fiduciary relationship, aforesaid, Berkadia benefitted financially.
110. In all of its transactions with Shallotte, Berkadia was the superior party by virtue of its knowledge and experience, aforesaid. The omission and related conduct on the part of Berkadia as herein alleged are abuses by Berkadia of the confidential and fiduciary relationship between it and Shallotte, from which a presumption of fraud arises.
....
129. The presentation to HUD by Samet and Berkadia that the impact fees had been discovered after the initial closing of the HUD insured loan on July 1, 2010 was the concealment of a material fact intentionally made to cover-up the fact that the impact fees had not been included in the HUD documents which Berkadia submitted to HUD prior to the initial closing on July 1, 2010.
130. As a direct and proximate cause of the concealment by Berkadia and Samet to HUD of the dates that Samet and Berkadia first learned of the impact fees, the amount of the loan was not increased and Shallotte lost the benefit of its bargain resulting from the Mediated Settlement Agreement which created a situation in which a default by Shallotte on its obligations to Berkadia was inevitable. Such omission on the part of Berkadia and Samet caused Shallotte to be damaged in an amount in excess of $25,000 as its evidence will disclose.
....
147. When Berkadia learned of its failure to have informed HUD, prior to the initial closing, of the existence of the impact fees, it possessed a fiduciary duty to disclose this fact to Shallotte. The failure of Berkadia to inform Shallotte of the results of its investigation constituted a second omission of material facts, and a violation of the fiduciary relationship which existed between them. The failure to disclose such material facts were [sic] made by Berkadia consciously, intentionally, maliciously and willfully and in careless and reckless disregard for the rights of Shallotte and was not disclosed to minimize the risk that HUD would learn the full extent of Berkadia's errors in processing the Shallotte loan and would not learn of its intentional misrepresentations to HUD in the submission of its documents in support of the insured loan to Shallotte.
Shallotte cites Smith v. GMAC Mortg. Corp.,2007 WL 2593148 (W.D.N.C. Sept. 5, 2007), as an example of a court applying North Carolina law that has found the existence of a fiduciary relationship despite the fact that the case arose in the borrower-lender context.[4] In Smith,the defendant-mortgagee entered into a contractual agreement whereby it agreed to make certain payments in escrow to the plaintiff-mortgagor's insurer. The defendant's failure to provide timely payments to the insurer resulted in the lapse of the plaintiff's insurance coverage and, consequently, the plaintiff was required to purchase higher-priced insurance, which ultimately led to a foreclosure on the plaintiff's home. Id.at *9.
Based on these allegations, the United States District Court for the Western District of North Carolina denied the defendant's motion to dismiss the plaintiff's breach of fiduciary duty claim.
Viewing the facts in the light most favorable to the Plaintiff, the Court finds that Plaintiff has ple[ ]d sufficient facts to support claims of breach of fiduciary duty. Ultimately it is the duty of the jury, not the Court, to make findings as to whether or not an extra-contractual fiduciary duty exists under these facts.
Id.at *10.
We believe that in the present case Shallotte-like the plaintiff in Smith-has adequately alleged that Berkadia undertook to perform certain duties on its behalf beyond those normally existing in the borrower-lender relationship so as to give rise to a fiduciary relationship. Therefore, we hold that the trial court erred in dismissing Shallotte's breach of fiduciary duty claim.
We wish to emphasize the limited nature of our holding on this issue, which is simply that based on the unique circumstances set out in Shallotte's complaint, it has satisfied its burden at the pleadings stage of stating a claim for breach of fiduciary duty. Nothing in our decision on this issue should be construed as a departure from the principle that a borrower-lender relationship is not sufficient in and of itself to establish a fiduciary relationship under North Carolina law.
Furthermore, we are not unmindful of the arguments Berkadia has made concerning the difficulties Shallotte may face in its efforts to prevail in this lawsuit, particularly on the issue of proximate cause. However, while Shallotte's complaint is admittedly not a model of clarity and appears to contradict itself at times, we express no opinion on the merits of these arguments as they are not properly before us at the pleadings stage. See Feltman,--- N.C.App. at ----, 767 S.E.2d at 619 ("The only purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the pleading against which it is directed. The function of a motion to dismiss is to test the law of a claim, not the facts which support it. This rule generally precludes dismissal except in those instances where the face of the complaint discloses some insurmountable bar to recovery." (citation and quotation marks omitted)).
III. Constructive Fraud Claim
Shallotte's complaint alleged a claim for constructive fraud in addition to its breach of fiduciary duty claim. This Court has noted that "[a]lthough the elements of these causes of action overlap, each is a separate claim under North Carolina law." White v. Consol. Planning, Inc.,166 N.C.App. 283, 293, 603 S .E.2d 147, 155 (2004), disc. review denied,359 N.C. 286, 610 S.E .2d 717 (2005).
To survive a motion to dismiss, a cause of action for constructive fraud must allege (1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured. Intent to deceive is not an element of constructive fraud. The primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is the constructive fraud requirement that the defendant benefit himself.
Id.at 294, 603 S.E.2d at 156 (internal citations omitted). Because we have already found that Shallotte adequately alleged the existence of a relationship of trust and confidence between it and Berkadia that was breached by Berkadia and resulted in injury to Shallotte, we need only determine whether Shallotte has sufficiently pled that Berkadia acted in order to benefit itself as a result of that breach.
In its complaint, Shallotte made the following allegations relevant to this issue:
139. Instead of properly discharging its duties to Shallotte, aforesaid, Berkadia decided upon a course of action to the financial devastation of Shallotte, and it continued to conceal from Shallotte the facts that it discovered in its investigation, aforesaid, which it knew was a substantial factor in Shallotte's default.
140. Even though Berkadia paid to HUD a little more than $14.9 million it has given notice to Shallotte of its election to accelerate the unpaid outstanding balance of the $14,555,700 loan and to demand payment from Shallotte for the entire outstanding balance, interest, and late fees, which demand was for $16,635,548.48 and which includes a multitude of fees and charges including a prepayment penalty of $1,134,261.84. Berkadia included in the demand a per diem charge of $2,089.84 owing it by Shallotte.
141. For Berkadia to demand payment from Shallotte of almost $2 million more than it paid HUD under all of the facts and circumstances as alleged herein is unconscionable and is a breach of its confidential and fiduciary duty it possesses to Shallotte who invested more than $2.7 million in the Project based on its trust and confidence in Berkadia.
142. For Berkadia to have continued to conceal from Shallotte the existence of its actionable omissions as are herein allege[d] is a breach of its fiduciary duties to Shallotte from which fraud is presumed.
143. For Berkadia to know of the existence of its error to disclose the amount of the impact fees to HUD and to Shallotte in 2009 and 2010 and to know, following its own independent investigation of the facts, that such concealment occurred in 2009 and 2010 and was a proximate cause of Shallotte's default, and to continue to conceal it during 2013 and in 2014 and to make a demand upon Shallotte for the payment of the entire outstanding balance with accrued interest and fees, including a prepayment penalty, all of which is almost more than $2 million more than Berkadia paid to HUD, is in breach of its fiduciary duty and is constructive fraud.
These allegations satisfy the pleading requirements for a claim for constructive fraud. Consequently, the trial court likewise erred in granting Berkadia's motion to dismiss as to this cause of action.
IV. Statute of Limitations
Berkadia next contends that even if Shallotte is deemed to have stated valid claims for relief arising out of the existence of a fiduciary relationship, such claims would nevertheless be barred by the three-year statute of limitations. We disagree.
This Court has held that
[a]llegations of breach of fiduciary duty that do not rise to the level of constructive fraud are governed by the three-year statute of limitations applicable to contract actions contained in N .C. Gen.Stat. § 1-52(1) (2003). However, a claim of constructive fraud based upon a breach of fiduciary duty falls under the ten-year statute of limitations contained in N.C. Gen.Stat. § 1-56 [2003].
Toomer v. Branch Banking & Trust Co.,171 N.C.App. 58, 66-67, 614 S.E.2d 328, 335 (internal citations, quotation marks, and brackets omitted), disc. review denied, 360 N.C. 78, 623 S.E.2d 263 (2005). Therefore, Shallotte's constructive fraud claim is governed by a ten-year-rather than a three-year-limitations period. It is undisputed that all of the events referenced in the complaint are alleged to have taken place within ten years of the date Shallotte filed this lawsuit.
Furthermore, Berkadia has failed to show that dismissal of Shallotte's breach of fiduciary duty claim under the three-year statute of limitations applicable to that claim was appropriate. "Breach of fiduciary duty claims accrue upon the date when the breach is discovered...." Trillium Ridge Condo. Ass'n, Inc. v. Trillium Links & Vill., LLC,--- N.C.App. ----, ----, 764 S.E.2d 203, 219, disc. review denied,--- N.C. ----, 766 S.E.2d 619-20 (2014). However, our Supreme Court has
recognized the "continuing wrong" or "continuing violation" doctrine as an exception to the general rule. When this doctrine applies, a statute of limitations does not begin to run until the violative act ceases. A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation. To determine whether [a party] suffers from a continuing violation, we examine this case under a test that considers the particular policies of the statute of limitations in question, as well as the nature of the wrongful conduct and harm alleged ... In particular, we must examine the wrong alleged by [the party] to determine if the purported violation is the result of continual unlawful acts, each of which restarts the running of the statute of limitations, or if the alleged wrong is instead merely the continual ill effects from an original violation.
Williams v. Blue Cross Blue Shield of N.C.,357 N.C. 170, 179, 581 S.E.2d 415, 423 (2003) (internal citations, quotation marks, and brackets omitted).
In the present case, Shallotte's complaint alleged a series of continuing wrongs on the part of Berkadia. Shallotte has asserted that the initial wrongdoing occurred when Berkadia failed to report the Impact Fee to HUD prior to the 1 July 2010 closing date of the loan. The complaint further alleged that Berkadia subsequently committed a new act of wrongdoing by purposefully concealing from HUD the discovery by its executives during an internal investigation both that (1) the Impact Fee had not been disclosed on the loan application; and (2) the fault for this nondisclosure rested with Berkadia rather than Shallotte.
Indeed, the complaint expressly stated that this failure by Berkadia
constituted a second omissionof material facts, and a violation of the fiduciary relationship which existed between them. The failure to disclose such material facts were [sic] made by Berkadia consciously, intentionally, maliciously and willfully and in careless and reckless disregard for the rights of Shallotte and was not disclosed to minimize the risk that HUD would learn the full extent of Berkadia's errors in processing the Shallotte loan and would not learn of its intentional misrepresentations to HUD in the submission of its documents in support of the insured loan to Shallotte.
(Emphasis added.)
Shallotte has also alleged that Berkadia thereafter engaged in acts designed to financially benefit Berkadia at the expense of Shallotte in its dealings with HUD in connection with the Project. Because it is unclear from the complaint precisely when these later acts of wrongdoing by Berkadia are alleged to have occurred, we are satisfied that-for purposes of our limited review under Rule 12(b)(6) -Shallotte's breach of fiduciary duty claim is not barred by the statute of limitations. See Dawn v. Dawn,122 N.C.App. 493, 495-96, 470 S.E.2d 341, 342-43 (1996) ("In order for a defendant to succeed on a 12(b)(6) motion to dismiss based on a statute of limitations, he must show that the plaintiff's complaint on its facediscloses that the action is time-barred.... Taking all allegations in plaintiffs' complaint as true, as we are required to do at this stage of the proceedings, we cannot conclude, as a matter of law, that plaintiffs' claims against the [defendant] are time-barred." (internal citations omitted and emphasis added)).
V. Estoppel
Finally, Berkadia contends that Shallotte is judicially estopped from asserting its breach of fiduciary duty and constructive fraud claims on the ground that its allegations in support of these claims are inconsistent with assertions Shallotte previously made in a pleading it filed in a lawsuit brought by Brunswick County concerning the Project. We disagree.
We have explained that "[j]udicial estoppel is an equitable, gap-filling doctrine that provides courts with a means to protect the integrity of judicial proceedings from individuals who would play fast and loose with the judicial system." Harvey v. McLaughlin,172 N.C.App. 582, 584, 616 S.E.2d 660, 662 (2005) (citation, quotation marks, and brackets omitted), disc. review denied,360 N.C. 175, 628 S.E.2d 250 (2006). "Broadly speaking, judicial estoppel prevents a party from acting in a way that is inconsistent with its earlier position before the court. This equitable doctrine, which may be invoked in a court's discretion is inherently flexible and requires weighing of relevant factors." Powell v. City of Newton,364 N.C. 562, 569, 703 S.E.2d 723, 728 (2010) (internal citations and quotation marks omitted). "Judicial estoppel is to be applied in the sound discretion of our trial courts. Where the essential element of inconsistent positions is not present, it is an abuse of discretion to bar plaintiff's claim on the basis of judicial estoppel." Estate of Means ex rel. Means v. Scott Elec. Co.,207 N.C.App. 713, 719, 701 S.E.2d 294, 299 (2010) (internal citation, quotation marks, and brackets omitted).
In making this argument, Berkadia requests that we take judicial notice of statements made by Shallotte in an answer filed on its behalf in the lawsuit brought by Brunswick County against Shallotte and HUD that differ from Shallotte's allegations in the present case relating to the actual amount of the Impact Fee and Shallotte's awareness of several changes in that amount that occurred during the time period at issue. We agree that some degree of ambiguity exists from a reading of Shallotte's complaint in the present case and the answer it filed in the Brunswick County litigation regarding (1) the fact that at various points in time Shallotte appears to have believed the amount of the Impact Fee to be $77,250.00, $576,800.00, and $873,000.00; and (2) precisely when and under what circumstances its belief as to the actual amount of the Impact Fee changed.
However, we are unable to conclude based simply on a comparison between the complaint in the present action and Shallotte's prior pleading in the Brunswick County lawsuit that the doctrine of judicial estoppel requires the dismissal of Shallotte's claims that are currently before us. Moreover, we note that Shallotte's claims in the present action are based, at least in part, on the assertion that Berkadia made no mention of the Impact Fee to HUD at allprior to the closing on the loan-regardless of the precise amount of that fee.
Conclusion
For the reasons stated above, we reverse the trial court's dismissal of Shallotte's breach of fiduciary duty and constructive fraud claims against Berkadia and dismiss Berkadia's cross-appeal.
REVERSED IN PART; DISMISSED IN PART.
Judges STEELMAN and HUNTER, JR. concur.
Report per Rule 30(e).
Judge STEELMAN concurred in this opinion prior to 30 June 2015.
Opinion
Appeal by plaintiff and cross-appeal by defendant Berkadia Commercial Mortgage, LLC from order entered 3 September 2014 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 3 June 2015.

The initial party to the agreement was Berkadia's predecessor in interest, Capmark Finance, Inc. ("Capmark"), whose obligations, acts, and omissions Berkadia subsequently assumed and ratified.

We note that three other lawsuits were filed relating to the Project. In 2012, Shallotte filed an action against Samet in Mecklenburg County Superior Court. Later that year, Samet filed a lawsuit against both Shallotte and Berkadia in Guilford County Superior Court. In 2013, Brunswick County filed a lawsuit against Shallotte and HUD in Brunswick County Superior Court.

While the trial court also dismissed Shallotte's claim for unfair trade practices, Shallotte has failed to offer any substantive argument in its brief as to why the dismissal of that claim was improper. Therefore, we deem any challenge to the trial court's dismissal of that claim to be abandoned for purposes of the present appeal. See N.C.R.App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned."); see also Wilkerson v. Duke Univ., --- N.C.App. ----, ----, 748 S.E.2d 154, 161 (2013) ("Plaintiff makes no argument on appeal that the trial court erred in granting summary judgment in favor of defendants with regards to his claims of public stigmatization and negligence. These arguments are deemed abandoned.").

While a federal court's interpretation of North Carolina law is in no way binding on North Carolina courts, we are free to consider such decisions as persuasive authority. See Libertarian Party of N.C. v. State, 200 N.C.App. 323, 331, 688 S.E.2d 700, 706 (2009) ("[I]n construing and applying our laws and the Constitution of North Carolina, neither this Court nor our Supreme Court is bound by the decisions of federal courts, including the Supreme Court of the United States, although in our discretion we may conclude that the reasoning of such decisions is persuasive." (citation and quotation marks omitted)), aff'd as modified, 365 N.C. 41, 707 S.E.2d 199 (2011).